UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN SIMMONS; )<br>DAVID MARSTERS, )<br>by his next friend, Nancy Pomerleau; )<br>LORRAINE SIMPSON, by her guardian, Sara Spooner; )<br>SHERRI CURRIN, by her guardian, Sara Spooner; )<br>CAROLE CHOJNACKI, by her guardian, Sara Spooner; )<br>RICHARD CAOUETTE, by his guardian, Sara Spooner; )<br>DONALD GRANT, by his guardian, Sara Spooner, )<br>on behalf of themselves )<br>and other similarly situated persons; and )<br>MASSACHUSETTS SENIOR ACTION COUNCIL, )<br>   )<br>         Plaintiffs, )<br>   )<br>      v. )<br>   )<br>MAURA HEALEY, in her official capacity )<br>as Governor of the Commonwealth of Massachusetts; )<br>KATE WALSH, in her official capacity )<br>as Secretary, Executive Office of Health and )<br>Human Services; )<br>MATTHEW GORZKOWICZ, in his official capacity )<br>as Secretary of the Executive Office of Administration )<br>and Finance; )<br>ELIZABETH CHEN, in her official capacity as )<br>Secretary, Executive Office of Elder Affairs; )<br>and MICHAEL LEVIN, in his official capacity )<br>as Assistant Secretary of MassHealth, )<br>   )<br>         Defendants. ) | CIVIL ACTION NO.<br>1:22-cv-11715-PBS |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

John Simmons, David Marsters, Lorraine Simpson, Sherri Curran, Carole Chojnacki, Richard Caouette, and Donald Grant (the "Individual Plaintiffs") move this Court to certify this case as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. In support of their motion, the Individual Plaintiffs state that:

1

1.      The Individual Plaintiffs are Medicaid-eligible individuals with mental illness and/or physical disabilities, including older adults with disabilities, who are unnecessarily confined in nursing facilities in Massachusetts. Each Individual Plaintiff can be appropriately served by the community service system funded and operated by the Defendants, and prefers to live in a more integrated setting, with appropriate residential services and supports. However, each Individual Plaintiff remains segregated as a result of the Defendants' planning, administration, and funding of their long-term care system, which unduly relies on segregated settings like nursing facilities, and which denies the Individual Plaintiffs and other similarly situated persons in nursing facilities the opportunity to receive services in the most integrated setting. As described in the Complaint, the Defendants' administration and funding of their long-term care system violate Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 *et seq.* ("the ADA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), and Title XIX of the Social Security Act, 42 U.S.C. §§ 1396a(a)(8), (10)(a) ("the Medicaid Act").

2.      Additionally, the Individual Plaintiffs who have mental illness have been or are being denied the pre-admission evaluations and post-admission specialized services in the nursing facility that are necessary to provide them with active and appropriate treatment, in violation of the Nursing Home Reform Amendments (NHRA) to the Medicaid Act, 42 U.S.C. § 1396r(e)(7).

3.      This action seeks class-wide injunctive relief consistent with Rule 23(b)(2) of the Federal Rules of Procedure to end the harm suffered by the Individual Plaintiffs and others similarly situated who are segregated in nursing facilities and denied appropriate treatment. The Individual Plaintiffs seek injunctive relief requiring the Defendants to fulfill their obligations to the proposed class under the ADA, Section 504, and the NHRA by, among other things: (1) providing community residential services and supports in the most integrated setting sufficient to avoid

unnecessary institutionalization in nursing facilities in Massachusetts, and ensuring that services for persons with disabilities from communities of color are designed to be responsive to the needs of those communities; (2) providing case management services to plan, coordinate, and monitor transition services, provide information and opportunities to learn about community living, and facilitate transitions into integrated settings in the community; (3) developing and implementing an informed choice and in-reach process that allows individuals to make an informed choice whether to remain in a segregated nursing facility; (4) making reasonable modifications to the policies, practices, rules, and requirements regarding the eligibility for and administration of the Defendants' long-term care system in order to ensure all qualified individuals receive the community residential services and supports needed to reside in integrated settings; (5) conducting comprehensive screens and assessments of individuals with serious mental illness as required by the Pre-Admission Screening and Resident Review (PASRR) provisions of the Medicaid Act to determine whether their needs could be appropriately met in a more integrated setting than a nursing facility and determine if they would benefit from specialized services; and (6) providing individuals with mental illness in nursing facilities the array of needed specialized services.

4.      The Individual Plaintiffs seek relief on their own behalf and on behalf of other similarly situated persons with disabilities who are living in nursing facilities and others who will be screened for admission to nursing facilities in the future. Most of these individuals are unnecessarily segregated in nursing facilities and would prefer to live in an integrated community setting with residential services and supports. Additionally, most of the proposed class members with serious mental illness currently confined to nursing facilities are denied the specialized services that the Defendants are obligated to provide.

5. The Individual Plaintiffs request that the Court certify the following class: "All Medicaid-eligible adults in Massachusetts with mental illness and/or physical disabilities, including older adults, who, now or in the future: (1) reside in a nursing facility for at least 60 days, notwithstanding any temporary hospitalizations, and (2) have not been provided community residential services and supports in integrated settings in the community."

6. The Individual Plaintiffs request that the Court certify the following subclass: "All Medicaid-eligible adults with serious mental illness who, now or in the future, have been admitted to, or who were screened for admission to, nursing facilities pursuant to 42 U.S.C. § 1396r(e)(7) and 42 C.F.R. § 483.112."

7. The proposed class satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1) because there are over 20,000 Medicaid-eligible individuals with mental illness and/or physical disabilities, including older adults, who are currently segregated in nursing facilities in Massachusetts, and a significant portion of these individuals could, with appropriate support, transition to the community. *See* Exhibit 1, Initial Affidavit of Karen Detmers (Detmers Aff.), ¶¶ 8(d)-(e) and Appendix C, p. 6 (federal nursing facility data from the Minimum Data Set (MDS), indicating that of the 30,333 total [Medicaid and non-Medicaid] residents in Massachusetts nursing facilities during the third quarter of fiscal year 2022, 11,402 individuals were appropriate for discharge to the community). *See also* Detmers Aff. ¶¶ 3(a)-(j) and App. A (demonstrating that 852 people with disabilities in nursing facilities were denied residential waiver services during waiver years 2106-2020, because the waiver was full). The proposed subclass satisfies the numerosity requirement because there are thousands of individuals with mental illness who are screened and admitted to nursing facilities each year. *See* Detmers Aff. ¶¶ 6(a)-(b) and App. B, p. 1 (EOHHS

4

PASRR data indicating that 4,142 people with mental illness screened and 348 admitted to nursing facilities in fiscal year 2022).

8.  Pursuant to Fed. R. Civ. P. 23(a)(2), the proposed class shares several common legal and factual claims, including:

 a. Whether the Defendants are violating the ADA and Section 504 by planning, funding, and administering their long-term care system, including various community services programs, in a manner that requires individuals with disabilities to live in nursing facilities in order to receive residential services and supports;

 b. Whether the Defendants are violating the ADA and Section 504 by (i) failing to offer and provide community residential services and supports to nursing facility residents with disabilities that would enable them to live in the most integrated setting appropriate to their needs; and (ii) utilizing eligibility criteria and methods of administration that have the effect of excluding individuals with disabilities from accessing the community residential services and supports they need to reside in integrated, community residential settings;

 c. Whether the Defendants' failure to provide individuals with disabilities in nursing facilities with timely access to community residential services and supports that would allow them to transition to the community, and their failure to provide timely services for individuals with disabilities enrolled in one of the Defendants' community-based long term care programs, violate the reasonable promptness provisions of the Medicaid Act;

5

      d.      Whether the Defendants' failure to provide individuals with disabilities with information sufficient to allow them to make an informed choice of whether to enter and/or remain in a nursing facility, including failing to provide nursing facility residents with reasonable accommodations in the choice process, violates the freedom of choice provision of the Medicaid Act and the ADA.

    9.      The Defendants have acknowledged, in their community waiver service reports and other documents, that there are a significant number of individuals with disabilities in nursing facilities who could live in integrated community settings, but numerous administrative obstacles and program deficiencies, including a lack of sufficient residential services and supports, prevent their moving to integrated community settings. *See* Detmers Aff. ¶¶ 3(a)-(j) and App. A. The Defendants are administering their community services programs, through the application, eligibility, and informed choice processes, in a manner that denies individuals with disabilities residential services and supports. *See* Exhibit 2, Initial Affidavit of Randy Webster (Webster Aff.), ¶¶ 13-18 (administration of the MFP waivers results in preferential treatment for certain individuals who are allowed to apply early); 19-23 (eligibility criteria for MFP waivers are applied in a subjective and discriminatory manner); ¶¶ 24-26 (information about the MFP and other waivers is inadequate and denies individuals an informed choice about whether to remain in nursing facilities; ¶¶ 27-29 (the capacity of the MFP waivers is insufficient to serve the number of people with disabilities who need residential services to transition to the community).

    10.      The subclass shares common legal and factual claims, including *inter alia*:

      Whether the defendants are violating the PASRR provisions of the Medicaid Act by: (i) failing to establish a Level II evaluation program that accurately determines if individuals with mental illness who apply for admission to a nursing

6

facility can be appropriately served in more integrated community residential settings; (ii) failing to conduct professionally acceptable assessments to determine the specialized services these individuals require in a nursing facility; and (iii) failing to provide an array of specialized services to individuals with mental illness in nursing facilities who need them in a manner that satisfies the federal standard for appropriate and active treatment.

11. The Defendants' own data demonstrates that many individuals with mental illness are not considered for alternative placement in the community, nor provided specialized services once admitted to the nursing facility. *See* Detmers Aff. ¶ 6(g) and (j) and App. B, p. 2 (of the 383 people with serious mental illness who were admitted to nursing facilities in fiscal year 2021, less than 11 were provided with specialized services).[1]

12. The Plaintiffs retained Barbara Pilarcik, R.N., as an expert in this case to review the Individual Plaintiffs. Ms. Pilarcik reviewed the records of all the Individual Plaintiffs, met in person with each of them at their nursing facilities, met with a social worker or other knowledgeable staff person from the nursing facility, and spoke to their guardians or family members, when available. Based on this review, Ms. Pilarcik determined that all seven Individual Plaintiffs are appropriate for, and prefer, placement in an integrated community residential setting. *See* Exhibit 3, Initial Affidavit of Barbara Pilarcik, R.N. (Pilarcik Aff.), ¶ 14(a)-(c). She also found that most were not provided with timely and adequate information about community living options. *Id.* ¶ 14(e).

13. Based on Ms. Pilarcik's Initial Affidavit, the Individual Plaintiffs' claims are typical of the claims of the class, as required by Fed. R. Civ. P. 23(a)(3). The Individual Plaintiffs are appropriate for community residential services, do not want to live in segregated

---

[1] EOHHS redacts all numbers that are 11 or less to protect confidentiality of residents.

nursing facilities, yet they remain unnecessarily institutionalized due to the Defendants' failure to promptly provide them with the residential services and supports to live in their most integrated setting. *Id.* ¶ 92. Moreover, based upon her experience, Ms. Pilarcik has a professional opinion that there are many other similarly-situated people with disabilities in nursing facilities who could be appropriately served in community residential settings. *Id.*

14. Ms. Pilarcik also found that the Individuals Plaintiffs with mental illness were not properly screened and evaluated, as required by federal law, and they are not being provided needed specialized services. *Id.,* ¶ 14(f).

15. Based on Ms. Pilarcik's Initial Affidavit, the claims of the Individual Plaintiffs with mental illness are typical of the claims of the subclass because virtually all of them were not properly evaluated and are not receiving needed specialized services. *Id.*

16. The representative parties will fairly and adequately protect the interests of the class and the subclass. The Individual Plaintiffs will vigorously represent the interests of the unnamed class members, and all members of the class and the subclass will benefit by these efforts. The interests of the class and the subclass and those of the Individual Plaintiffs are identical.

17. There is no antagonism or conflict between the Individual Plaintiffs and other members of the class or between the Individual Plaintiffs and other members of the subclass. In addition, the Center for Public Representation, Greater Boston Legal Services, Justice in Aging, and Foley Hoag LLP are highly qualified attorneys with considerable experience in assisting persons with disabilities and in class action litigation. They have the skills and resources to adequately represent the class and the subclass in this case. Therefore, the requirements of Fed. R. Civ. P. 23(a)(4) are satisfied.

18. The Defendants, their agents, employees, and predecessors and successors in office have acted or will act on grounds generally applicable to the class and the subclass, thereby making appropriate injunctive or declaratory relief with respect to the class and the subclass as a whole.  Specifically, there are several issues which can be resolved on a class-wide basis through a single injunction, and, if decided favorably, will provide the Individual Plaintiffs and all class members with the relief they seek, including:

   a. Whether the Defendants' planning, funding, and administration of its long-term care system for individuals with disabilities utilize a discriminatory application and eligibility process that fails to provide appropriate residential services and supports in the most integrated setting, resulting in the unnecessary institutionalization of individuals with disabilities in nursing facilities;

   b. Whether the Defendants' residential services and support options for individuals with disabilities are inadequate and/or insufficient to allow all individuals with disabilities in nursing facilities who are qualified for community residential services and supports to transition to integrated residential settings in the community in a timely manner;

   c. Whether the Defendants fail to effectively provide individuals with disabilities in nursing facilities with sufficient and culturally competent information, opportunities, and accommodations to allow all individuals with disabilities to make an informed choice whether to remain in a segregated institution or move to integrated residential settings in the community; and

   d. Whether the Defendants fail to provide individuals with disabilities in nursing facilities with medically necessary case management that plans,

coordinates, and assists in obtaining appropriate community residential services and supports that would allow them to live in culturally competent integrated residential settings in the community.

19. These facts, claims, and evidence set forth common contention of standardized conduct, caused by specific policies and practices, that is susceptible to a common resolution and can be remedied by a single injunction. The Court is not required to make individual determinations of liability or remedy.

20. Because this is a civil rights action seeking only injunctive relief, and since the Defendants have acted or refused to act on grounds generally applicable to the entire class and subclass, thereby making final injunctive and declaratory relief appropriate for the whole class, the proposed class and subclass satisfy the standards of Fed. R. Civ. P. 23(b)(2).

21. The Individual Plaintiffs, through their counsel, are not aware of other pending actions in any court against the Defendants alleging the same or similar causes of action either on a class-wide or individual basis.

22. The Individual Plaintiffs understand that this case is being brought as a class action and seeks relief on behalf of a broad group of people in nursing facilities, not merely relief for each of them individually.

23. Because this is a Rule 23(b)(2) class action, notice to the class should not be required at this point in the litigation. Rule 23(c)(2)(A); *see also* Advisory Committee Note on Rule 23, 215 F.R.D. 158, 218 (2003) ("The authority to direct notice to class members in a (b)(1) or (b)(2) class action should be exercised with care. For several reasons, there may be less need for notice than in a (b)(3) class action. There is no right to request exclusion from a (b)(1) or (b)(2) class. The characteristics of the class may reduce the need for formal notice. The cost of providing

notice, moreover, could easily cripple actions that do not seek damages.  The Court may decide not to direct notice after balancing the risk that notice costs may deter the pursuit of class relief against the benefits of notice.").

24.     Plaintiffs' counsel have submitted a Memorandum of Law in Support of this Motion.

25.     Plaintiffs reserve the right to amend this Motion based on discovery received and for other reasons as circumstances require.

WHEREFORE, the Individual Plaintiffs respectfully request that, pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, the Court:

a.      Certify a Class consisting of "Medicaid-eligible adults in Massachusetts with mental illness and/or physical disabilities, including older adults who, now or in the future: (1) reside in a nursing facility for at least 60 days, notwithstanding any temporary hospitalizations, and (2) have not been provided community residential services and supports to live in integrated settings in the community."

b.      Certify a Subclass consisting of "Medicaid-eligible adults with serious mental illness who, now or in the future, have been admitted to, or who were screened for admission to, nursing facilities pursuant to 42 U.S.C. § 1396r(e)(7) and 42 C.F.R. § 483.112."

c.      Appoint the Center for Public Representation, Greater Boston Legal Services, Justice in Aging, and Foley Hoag LLP as co-class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

11

Respectfully submitted,

/s/ Steven J. Schwartz
Steven J. Schwartz (Bar No. 448440)
Mark J. Murphy (*Pro hac vice*)
Jennifer Hotchkiss Kaplan (Bar No. 658213)
Center for Public Representation
5 Ferry Street
Easthampton, MA 01027
413-586-6024
Email: sschwartz@cpr-ma.org
Email: mmurphy@cpr-ma.org
Email: jkaplan@cpr-ma.org

Deborah Filler (Bar No. 545478)
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
Email: dfiller@gbls.org

Regan Bailey (*Pro hac vice*)
Eric Carlson (*Pro hac vice*)
Justice in Aging
1444 I Street, NW, Suite 1100
Washington, DC  20005
Phone: (202) 683-1990
E-mail: rbailey@justiceinaging.org
E-mail: ecarlson@justiceinaging.org

Dean Richlin (Bar No. 419200)
Kristyn Bunce DeFilipp (Bar No. 676911)
Jeremy Meisinger (Bar No. 688283)
Andrew London (Bar No. 690782)
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210
Email: drichlin@foleyhoag.com
Email: KBunceDeFilipp@foleyhoag.com
Email: jmeisinger@foleyhoag.com
Email: alondon@foleyhoag.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.1(b)**

In accordance with Local Rule 37.1(b), I, Steven Schwartz, counsel for Plaintiffs, hereby certify that, as detailed in the accompanying memorandum, I conferred with counsel for Defendants on April 13, 2023, regarding the subject matter of this motion, and that the disputed issues were not then resolved.

*/s/* Steven J. Schwartz

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2023, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.

*/s/* Andrew London