**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DAVID MARSTERS, | ) | |
| by his next friend, Nancy Pomerleau; | ) | |
| LORRAINE SIMPSON, by her guardian, Sara Spooner; | ) | |
| SHERRI CURRIN, by her guardian, Sara Spooner; | ) | |
| CAROLE CHOJNACKI, by her guardian, Sara Spooner; | ) | |
| RICHARD CAOUETTE, by his guardian, Sara Spooner; | ) | |
| DONALD GRANT, by his guardian, Sara Spooner, | ) | |
| on behalf of themselves | ) | |
| and other similarly situated persons; and | ) | |
| MASSACHUSETTS  SENIOR ACTION COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. |
| | ) | 1:22-cv-11715-NMG |
| v. | ) | |
| | ) | |
| MAURA HEALEY, in her official capacity | ) | |
| as Governor of the Commonwealth of Massachusetts; | ) | |
| KATE WALSH, in her official capacity | ) | |
| as Secretary, Executive Office of Health and | ) | |
| Human Services; | ) | |
| MATTHEW GORZKOWICZ, in his official capacity | ) | |
| as Secretary of the Executive Office of Administration | ) | |
| and Finance; | ) | |
| ELIZABETH CHEN, in her official capacity as | ) | |
| Secretary, Executive Office of Elder Affairs; | ) | |
| and MICHAEL LEVINE, in his official capacity | ) | |
| as Assistant Secretary of MassHealth, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND PROVISIONAL
CERTIFICATION OF SETTLEMENT CLASS**

1

## I.    Introduction

The Plaintiffs submit this Memorandum in Support of the Parties' Joint Motion for Preliminary Approval of the Settlement Agreement and Provisional Certification of a Settlement Class (the "Joint Motion"). The Memorandum elaborates on the reasons set forth in the Joint Motion why the Settlement Agreement should be preliminarily approved and the class provisionally certified.

As set forth in the Joint Motion, the proposed Agreement is fair, reasonable, and provides substantial benefits to the entire class, while avoiding the delay, risk, and expense inherent in continued litigation. Joint Mot., ¶ 10. It is the product of extensive, arm's-length negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation. *Id.* Negotiations were facilitated by an experienced mediator, Eric Van Loon. *Id.*, ¶ 3. The provisional certification of the proposed Plaintiff Class for settlement purposes is appropriate under Fed. R. Civ. P. 23(a), (b)(2), and (e), and is necessary to resolve the case. Finally, the schedule for issuance of Notice and the fairness hearing proposed by the Parties will allow an adequate opportunity for the class to review and comment on the proposed Agreement and is consistent with the Parties' desire for prompt implementation of the terms of the proposed Agreement. For the reasons set forth below, the Plaintiffs respectfully request that the Court grant the Joint Motion.

## II.    History of the Litigation

On October 11, 2022, the Plaintiffs initiated this federal class action lawsuit on behalf of seven individuals with disabilities in nursing facilities in Massachusetts, the Massachusetts Senior Action Council ("MSAC"), and a putative class of approximately 20,000 Medicaid-eligible people with disabilities in nursing facilities in the Commonwealth. (ECF No. 1.) The

lawsuit challenges class members' unnecessary institutionalization under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, and the lack of appropriate evaluations and specialized services for people with serious mental illness under the Pre-Admission Screening and Resident Review ("PASRR") provisions of the Medicaid Act.  The Complaint alleges that the Commonwealth has failed to provide community residential services and supports,[1] and, as a result, thousands of individuals with medical conditions, physical disabilities, and mental illness must live in segregated nursing facilities rather than in integrated settings in the community, as required by the Supreme Court's decision in *Olmstead v. L.C.,* 527 U.S. 581 (1999).  The Complaint further alleges that such unnecessary institutionalization often disproportionately impacts people of color.[2]  The Commonwealth has successfully provided appropriate integrated placements in the community for people with intellectual and developmental disabilities ("IDD") and for people with acquired brain injuries ("ABI"), pursuant to settlement agreements in similar ADA cases.

On January 16, 2023, the Defendants filed an Answer denying all liability under relevant federal laws.  (ECF No. 40.)  On April 19, 2023, the Plaintiffs filed their Motion for Class Certification, with supporting exhibits.[3]  On May 3, 2023, the Court established a pre-trial schedule.  On July 28, 2023, the Defendants filed a Motion to Dismiss the Named Plaintiffs, with

---

[1] "Residential services and supports" includes a range of residential programs, from traditional congregate living arrangements (often referred to as group homes), to supportive housing programs, to subsidized housing units with clinical and therapeutic supports.

[2] Nursing facilities serving communities of color saw higher mortality rates during the worst of the Covid-19 outbreak.  Additionally, Black nursing facility residents are often inaccurately diagnosed with mental illness more frequently and experience increased physical restraints, indwelling catheters, and psychotropic medications as compared to white residents.

[3] *See* Pls.' Mot. Certify Class (ECF No. 70) and Am. Mem. (ECF No. 76); Defs.' Opp'n Mot. Certify Class (ECF No. 108); Pls.' Reply (ECF Nos. 116-120); Defs.' Sur-reply & Resp. First Statement of Interest Filed by the United States (ECF No. 133).

supporting exhibits.[4]  The Parties engaged in general fact discovery through October 2, 2023, and concluded their motion practice in late October of 2023.  The United States Department of Justice filed Statements of Interest in support of Plaintiffs on both motions.[5]  During this period, lead plaintiff John Simmons died while still in the nursing facility.  (ECF No. 92.)

On October 18, 2023, the Parties sought a joint litigation stay to pursue mediation.  (ECF No. 140.)  The above-mentioned motions remained pending during the stay, which was twice extended, with approval of the Court, through March 21, 2024.  (ECF Nos. 144, 149.)  Mediation began on October 20, 2023, and continued through March 22, 2024.  With the support of the jointly-selected mediator, and more than twenty-four mediation sessions, the Parties reached the proposed Settlement Agreement.

## III.    Summary of the Settlement Agreement

The Agreement, attached to the Joint Motion as Ex. 1, outlines actions to be undertaken by the Commonwealth over an eight-year term to provide: (1) comprehensive case management services to all people with disabilities in nursing facilities, including a new in-reach program that provides monthly in-person case management meetings with individual residents to offer information, opportunities to explore community living, support to make an informed choice whether to move to the community, and transition planning and assistance; (2) the provision and coordination of behavioral health specialized services; and (3) residential services and supports, leading to the transition of at least 2,400 class members from nursing facilities to integrated settings in the community.  Services will be provided in a manner that reflects class members'

---

[4] Defs.' Mot. Dismiss Named Pls.' Claims (ECF No. 98); Pls.' Opp'n Mot. Dismiss (ECF No. 127); Defs.' Reply (ECF No. 139).
[5] Amicus Br. of the U.S. Department of Justice (ECF No. 129); Amicus Br. of the Department of Justice regarding Defs.' Mot. Dismiss (ECF No. 132).

primary language and cultural background. (Agreement, ¶¶ 11, 20, 32, 40).

More specifically, the Agreement sets forth the following programs, services, and supports which the Commonwealth will provide to class members.[6]

A.    *In-reach, Informed Choice, and Transition Planning*

The Defendants will provide all people with disabilities in nursing facilities with in-reach, information, opportunities, and support to make informed choices about whether to transition from a facility to the community through the Community Transition Liaison Program ("CTLP") operated by the Executive Office of Elder Affairs (Sec. II.A, ¶¶ 3-16); the Money Follows the Person program operated by the Executive Office of Health and Human Services' Office of MassHealth (Sec. II.B., ¶¶ 17-24); and an expanded case management program operated by the Department of Mental Health (Sec. II.C, ¶¶ 25-35).  The Agreement ensures that these programs will engage individuals' chosen supporters; identify their strengths, needs, preferences, and concerns regarding community living; and account for cultural competence and primary language, (Sec. II.A, ¶¶ 8-12; Sec. II.B, ¶¶ 18-21; Sec. II.C, ¶¶ 30-33); and provide transition planning and assistance to all people with disabilities in nursing facilities interested in living in the community (Sec. V, ¶¶ 55-57).  These provisions for the meaningful presentation of information and robust support throughout the choice and transition processes are modeled on those in other *Olmstead* cases, which have consistently led to more and better transitions for individuals with disabilities who want to live in the community.  *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294 (D. Conn. 2008); *see also* Steven J. Schwartz, Robert D. Fleischner, Alexander Z. Schwartz & Emily M. Stephens, *Realizing the Promise of Olmstead:*

---

[6] *See* Sec. IV.A, *infra*, for a discussion of the proposed class.

*Ensuring the Informed Choice of Institutionalized Individuals with Disabilities to Receive Services in the Most Integrated Setting*, J. OF LEGAL MED., 40:1, 63-100 (2020).

B.    *Coordination of Behavioral Health Services, Including Specialized Services, for Class Members with PASRR SMI*

The Agreement requires the Commonwealth to provide specialized and other behavioral health services and service coordination to people with serious mental illness ("SMI") through the Behavioral Health Community Partners ("BH CP") care coordinators or managed care programs (Sec. III, ¶¶ 36-45). These programs will ensure regular assessment, provision of services identified during assessment, necessary referrals to other services, and the opportunity to participate in a new specialized service called "Clubhouse." *Id.* Comprehensive delivery of these components helps reduce behavioral symptoms that necessitate institutionalization and improve independent functioning for nursing facility residents with SMI, which opens further opportunities in community settings. *See* 42 C.F.R. § 483.120(a)(iii) (describing specialized services for people with mental illness).

C.    *Residential Services, Housing Support, and Transitions*

The Agreement requires the Commonwealth to transition no fewer than 2,400 class members in nursing facilities to the community over an eight-year period (Sec. VI, ¶ 59). The Commonwealth must provide supported community placements in a mix of settings, including residential services like provider-operated group homes; non-residential services with housing supports, including housing-search, for people who lack housing; and home modifications for people with existing housing with accessibility barriers (Sec. IV, ¶¶ 46-54; Sec. VI, ¶¶ 58-64). The Agreement outlines timeframes for transitions to various residential settings. *Id.* The

provision of this range of settings removes barriers and enables class members from diverse backgrounds and different levels of resources to leave nursing facilities.

       *D.     Other Provisions*

The Agreement enumerates various data sharing elements concerning the provision of services and general implementation of the Agreement (Sec. VII.A, ¶¶ 65-68). Every quarter, the Commonwealth will submit a report detailing progress towards total transitions, as well as the progress of other programmatic service elements. *Id.* The Agreement also conditions obligations on appropriations by the Legislature (Sec. VIII, ¶ 69), and includes provisions for approval of the Agreement (Sec. IX.A, ¶¶ 70-78); the payment of attorneys' fees (Sec. IX.A, ¶ 75); voluntary dismissal of the Complaint (Sec. IX.B, ¶¶ 79-81); implementation of the Agreement (Sec. IX.C, ¶¶ 82-85); a dispute resolution process and ongoing jurisdiction of the Court to consider proposed modifications and enforcement of the Agreement (Sec. IX.D, ¶¶ 86-93); and termination of the Agreement (Sec. IX.E, ¶¶ 94-95). Finally, it includes a provision on release of claims (Sec. X, ¶¶ 96-99) and various miscellaneous provisions (Sec. XI, ¶¶ 100-09).

**IV.    The Proposed Class Should Be Certified for Settlement Purposes Under Rule 23(e) of the Federal Rules of Civil Procedure.**

Federal class action settlements are subject to court approval, which occurs in stages. *See, e.g., Grenier v. Granite State Credit Union*, 344 F.R.D. 356, 362 (D.N.H. 2023). Where parties seek certification of a class for purposes of settlement and preliminary approval of a class settlement agreement, Rule 23(e) provides that "the court must be satisfied that: (A) the proposed class should be certified for the purpose of settlement; (B) the settlement is fair, reasonable, and

adequate; and (C) the proposed notice and notice plan satisfy due process requirements."[7]  *Id.* at 366; *Nat'l Ass'n of Deaf v. Harvard Univ.*, No. 3:15-CV-30023-KAR, 2019 WL 6699449, at *1 (D. Mass. Dec. 9, 2019) (citing Fed. R. Civ. P. 23(e)).

The party moving for class certification must satisfy the requirements of Rule 23(a) and of at least one of the subdivisions of Rule 23(b).  *See Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003).  Since the Plaintiffs have extensively briefed these issues in their prior Memorandum in Support of Class Certification (ECF No. 76), including numerous supporting affidavits, here they only summarize the reasons and evidence in support of provisional certification of the class.

In Sec. IX, ¶ 74, the Parties seek certification of the following Settlement Class:

> All present or future Medicaid-eligible persons who: (i) are Massachusetts residents, (ii) have attained age 22, (iii) reside (at any time before the Termination Date) in a nursing facility within the Commonwealth for 60 days or more, and (iv) either (a) have a "disability" as defined in the ADA and are qualified for and would not oppose transition to a community-based setting, or (b) have PASRR SMI as determined pursuant to a Level II PASRR evaluation.

A.    *The Proposed Settlement Class Satisfies the Requirements of Fed. R. Civ. P. 23(a).*

1.    <u>The Proposed Settlement Class Is So Numerous That Joinder of All Members Is Impractical.</u>

The proposed Settlement Class is sufficiently large that joinder is impracticable.  Here, the Settlement Class consists of at least several thousand individuals who will receive residential services under the Agreement, and thousands more who will receive case management and in-

---

[7] Although there is overlap between this Rule 23(e) analysis and the decision to certify, the Court is required to analyze fairness as a separate and distinct issue.  Rule 23(e) "was designed to function as an additional requirement, not a superseding direction, for the 'class action' to which Rule 23(e) refers is one qualified for certification under Rule 23(a) and (b)."  *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 621 (1997)*; *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 71 (D. Mass. 2005).

reach services.  *See also* Detmers Aff., App. C, at 6 (ECF No. 70, Attach. 1, Ex. 1) (MDS data indicating that 11,402 people with disabilities in nursing facilities are appropriate for discharge to the community).  This number is sufficient to satisfy the numerosity requirement.  *See Griffin v. Burns*, 570 F.2d 1065, 1072-73 (1st Cir. 1978) (class of 123 voters).

In addition to considering the number of persons within a proposed class, courts also examine the practicability of joining the class members as plaintiffs.  *See Van Meter v. Harvey,* 272 F.R.D. 274, 282 (D. Me. 2011) (class contained present and future nursing home residents whose chronic disabilities and segregation made the maintenance of separate actions impractical).  Here, joinder is impracticable because the proposed Settlement Class includes not only currently institutionalized individuals, but also individuals who will be institutionalized in nursing facilities in the future.  *See Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (in civil rights actions members of the class are often "incapable of specific enumeration" (quoting Committee's Notes to Revised Rule 23, 3B Moore's Federal Practice 23.0 [10-2] (2d ed. 1969))).  Therefore, in light of the number and circumstances of current and future members, the proposed Settlement Class satisfies the numerosity requirement of Rule 23(a)(1).

2.    There Are Questions of Law and Fact Common to the Class.

Rule 23(a)(2) requires that the claims of a proposed class share common questions of law or fact.  Courts regularly certify classes in Title II ADA cases raising claims under the integration mandate, as interpreted by the Supreme Court in *Olmstead*.  527 U.S. 581.[8]

---

[8] Steven Schwartz & Kathryn Rucker, *The Commonality of Difference: A Framework for Obtaining Class Certification in ADA Cases After Wal-Mart*, 71 Syracuse L. Rev. 841, 901 n.6  (2021) (List of Selected ADA Class Action Cases, Ctr. for Pub. Representation, https://www.centerforpublicrep.org/wp-content/uploads/ADA-Class-Certification-Case-List.2020.pdf); ADA Class Action Cases, available at https://www.centerforpublicrep.org/wp-content/uploads/ADA-Class-Action-Cases.pdf; Institutional Class Action Cases, available at https://www.centerforpublicrep.org/wp-content/uploads/Institutional-Class-Action-Cases.pdf.).

Here, all members of the proposed Settlement Class are current or future residents of nursing facilities who share at least one common factual question – whether they are qualified for and do not oppose transition to a community-based setting – and at least one common legal question – whether the Defendants' discriminatory planning, administration, operation, and funding of a service system contribute to the unnecessary institutionalization and segregation of individuals with disabilities. Rule 23(a)(2) requires only *one* common factual or legal issue, the resolution of which will affect all or a significant number of putative class members. *See Conner B. v. Patrick*, 272 F.R.D. 288, 293 (D. Mass. 2011) ("Commonality is easily satisfied in part because 'there need be only a single issue common to all members of the class.'" (quoting *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd*., 247 F.R.D. 253, 263-64 (D. Mass. 2008))). Courts have routinely identified commonality in class actions that seek injunctive and declaratory relief. *See, e.g.*, *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) (affirming class certification in case challenging HHS policy denying Medicare beneficiaries the right to appeal determinations of their hospitalization status).

Commonality may exist even where class members are not identically situated, or where their injury does not arise in exactly the same way. *See Barrows,* 24 F.4th at 131-32 (finding commonality met notwithstanding that the injury arising from the challenged policy "may manifest differently depending on a beneficiary's medical situation," and holding that "different class members can benefit differently from an injunction" in a 23(b)(2) class (quoting *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 n.28 (2d Cir. 2020))); *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) ("Factual differences in the claims of the class members should not result in a

denial of class certification where common questions of law exist." (citations omitted));[9]

*Fitzmorris v. N.H. Dep't of Health & Hum. Servs. Comm'r Lori Weaver*, Case No. 21-cv-25-PB, 2023 WL 8188770, at *1 (D.N.H. Nov. 27, 2023); *Boulet v. Cellucci,* 107 F. Supp. 2d 61, 81 (D. Mass. 2000) (class of persons with intellectual disabilities waiting for community support services shared a common legal theory despite differences in medical and support needs of each individual). Therefore, the proposed Settlement Class meets the commonality requirement of Rule 23(a)(2).

### 3.    The Claims of the Individual Plaintiffs Are Typical of the Class.

Rule 23(a) also requires that the claims of those seeking to represent the proposed Settlement Class – in this case, the Individual Plaintiffs – be typical of the claims of the absent class members. Fed. R. Civ. P. 23(a)(3). The typicality requirement does not demand a showing of complete identity between the legal claims of a representative and each class member, but only "a showing of sufficient interrelationship between the claims of the representative and those of the class so that adjudication of the individual claims will necessarily involve the decision of common questions affecting the class." 1 Newberg on Class Actions, § 3:29 (5th ed. Nov. 2011); *see also Nat'l Ass'n of Deaf*, 2019 WL 6699449, at *2. The Individual Plaintiffs satisfy the typicality requirement of Rule 23(a)(3) because they share numerous interests and characteristics with the proposed Settlement Class, including: (1) they all have disabilities; (2) they all are living in nursing institutions; (3) they all are qualified and entitled to live in an

---

[9] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011) does not require that a defendant's conduct affect every class member in an identical way. Indeed, circuit courts, district courts in the First Circuit, and other courts considering systemic deficiencies have continued to certify classes post-*Wal-Mart*. In such cases, courts properly focused on the defendant's conduct, as evidenced by its policies or practices, even when those challenged practices did not have the identical effect on all individual plaintiffs and class members. *See D.L. v. District of Columbia*, 277 F.R.D. 38, 46 (D.D.C. 2011) ("The reasons for [the] common injury do not also have to be common to all members of the class."); *Connor B.,* 272 F.R.D. at 296 (stating that harms suffered by unnamed class members differing from those experienced by individual plaintiffs does not undermine commonality or typicality).

integrated community setting; (4) if adequately informed about and given access to remedial services, most would choose community placement; (5) many could be discharged to the community with the specific residential services sought in this case; and (6) for those with mental illness, they all are entitled to an appropriate PASRR evaluation that determines if they could be served in an alternative placement and need specialized services. *Lane v. Kitzhaber*, 283 F.R.D. 587, 598-99 (D. Ore. 2012); *see* Pilarcik Aff. ¶ 14 (ECF No. 70, Attach. 1, Ex. 3); Webster Aff. ¶ 30 (ECF No. 70, Attach. 1, Ex. 2).

Here, the claims of the Individual Plaintiffs and the claims of the proposed Settlement Class arise from the same policies and practices of the Defendants and result in similar injuries. *Id.* Since the Individual Plaintiffs' legal theories arise from the same course of conduct and their common claims are broadly typical of the claims of the proposed Settlement Class, the typicality requirement of Rule 23(a)(3) is satisfied. *See Fitzmorris*, 2023 WL 8188770, at *24-25.

4.    <u>The Class Representatives and Class Counsel Fairly and Adequately Represent the Interests of the Class.</u>

Rule 23(a)(4) requires that the representative plaintiffs fairly and adequately represent the interests of the entire class. To satisfy this requirement, two criteria must be met: (1) the attorneys representing the class must be qualified and competent; and (2) the class representatives must not have antagonistic or conflicting interests with the unnamed members of the class. *See, e.g., Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985); *In re Bank of Bos. Corp. Secs. Litig.*, 762 F. Supp. 1525, 1534 (D. Mass. 1991). Both elements of Rule 23(a)(4) are met in this case.

The primary factors considered in determining the adequacy of counsel are the attorneys' professional skills, experience, and resources. *See, e.g., Andrews,* 780 F.2d at 130 (counsel

should be qualified, experienced, and able to vigorously conduct the proposed litigation).  In considering the adequacy of named plaintiffs, the primary factors are whether the named plaintiffs' interest "will not conflict with the interests of any of the class members" and whether "common legal questions apply to the claims of the named plaintiffs and members of the proposed class."  *Nat'l Ass'n of Deaf*, 2019 WL 6699449, at *2 (quoting *Brito v. Barr*, 395 F. Supp. 3d 135, 147 (D. Mass. 2019), and *Andrews*, 780 F.2d at 130).

The Plaintiffs' counsel collectively have decades of experience in cases of this type, as well as the requisite skills and resources to properly litigate the Plaintiffs' claims.  The Center for Public Representation ("CPR") has been involved in complex class action litigation on behalf of institutionalized persons with disabilities for over 45 years and has been lead counsel in numerous class action lawsuits, both in the District of Massachusetts and in federal courts throughout the country, including in *Rolland v. Celluci*, No. 98-30208-KPN, 1999 WL 34815562 (D. Mass. Feb. 2, 1999); *Hutchinson v. Patrick*, No. 07-30084-MAP (D. Mass. Oct. 4, 2007); *Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*, 293 F.R.D. 254 (D.N.H. 2013); and *Steward v. Janek*, 315 F.R.D. 472 (W.D. Tex. 2016).  Justice in Aging (JIA) is nationally recognized for its expertise in the rights of older adults and the law relating to nursing facilities.  Since its founding in 1972, JIA has served as counsel in many similar class action cases, including *Alexander v. Price*, 275 F. Supp. 3d 313 (D. Conn. 2017); *Carr v. Becerra*, No. 3:22cv988(MPS), 2023 WL 1280172 (D. Conn. Jan. 31, 2023); and *Chinatown Service Center v. U.S. Department of Health and Human Services*, 1:21-cv-00331-JEB (D.D.C.) (Compl. filed Feb. 5. 2021).  Greater Boston Legal Services (GBLS) has represented thousands of persons with disabilities, including nursing facility residents, and litigated numerous class action lawsuits involving the rights of those persons to be free from discrimination.  Foley Hoag LLP is a law

firm nationally recognized for its skill in many different practice areas, including federal litigation.  Finally, the Plaintiffs' counsel have resources adequate to represent the proposed Settlement Class and have no professional or personal interests antagonistic to the interests of the proposed Settlement Class.

The Individual Plaintiffs will adequately represent the interests of the proposed Settlement Class.  Not only are the Individual Plaintiffs' interests in this case not antagonistic to or in conflict with the interests of Settlement Class members, but those interests coincide almost completely.  The Individual Plaintiffs are interested in receiving information about community living and want the choice of appropriate, integrated services in the community. *See* Compl. ¶ 1 & Sec. VII (Prayers for Relief) (ECF No. 1).  There are no meaningful differences between the Individual Plaintiffs and the Settlement Class on these fundamental issues, and the Individual Plaintiffs seek to vindicate legal rights shared by all members of the Settlement Class.

   B.  *The Settlement Class Satisfies the Requirements of Fed. R. Civ. P. 23(b)(2)*.

In addition to meeting the requirements of Rule 23(a), the Individual Plaintiffs meet the requirements of Rule 23(b)(2) because the Defendants "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Courts have long recognized that certification under Rule 23(b)(2) is particularly important in, and an appropriate vehicle for, civil rights actions.  *See, e.g., Yaffe*, 454 F.2d at 1366 ("The conduct complained of is the benchmark for determining whether a subdivision (b)(2) class exists, making it uniquely suited to civil rights actions."); *Nat'l Ass'n of the Deaf*, 2019 WL 6699449, at *2 ("[C]ivil rights actions like this one, where a party charges that another has

engaged in unlawful behavior toward a defined group, are 'prime examples' of Rule 23(b)(2) classes." (quoting *Reid v. Donelan*, 297 F.R.D. 185, 193 (D. Mass. 2014))).

Here, the elements of Rule 23(b)(2) are satisfied, and thus class certification is appropriate, because the Individual Plaintiffs allege systemic civil rights violations and seek declaratory and injunctive relief to benefit the Settlement Class as a whole.  This is exactly the type of litigation that the Federal Rules Advisory Committee anticipated would proceed under Rule 23(b)(2). *See* Fed. R. Civ. P. 23(b)(2), Advisory Committee Notes, 1966 amendments ("Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.").  Specifically, Plaintiffs alleged that the Defendants administered their system of long-term care services for individuals with disabilities in a discriminatory manner, by failing to administer their long-term care community programs in a fair and effective manner that accommodates the needs of individuals with disabilities and complex medical needs, by failing to provide the community residential services and supports required to avoid unnecessary institutionalization, and by failing to provide an effective choice process that allows people with disabilities to understand and make an informed choice about where to live.  *See* Pilarcik Aff. ¶¶ 14, 92; Webster Aff. ¶ 30; Detmers Aff. ¶¶ 3, 8, App. A, and App. B, at 6.  Additionally, Plaintiffs have alleged that the Defendants also have administered their PASRR Program in a discriminatory manner by failing to accurately screen nursing facility applicants for mental illness, assess whether their needs could be met in an alternative, less restrictive setting, and provide specialized services to those who need them.  Pilarcik Aff. ¶¶ 14(f), 34, 46, 77, 91. Thus, the Defendants are acting or refusing to act in a manner that equally affects and is generally applicable to the entire Settlement Class.  Injunctive and declaratory relief is

appropriate precisely because it will resolve the legality of the Defendants' conduct towards the Settlement Class and provide a remedy to the class as a whole. *See* Webster Aff. ¶ 30.

Finally, Rule 23(b)(2) requires that the defendant act in a manner generally applicable to the class, not that every class member suffer the same injury at the same time. *Walters v. Reno,* 145 F.3d 1032 (9th Cir. 1998) (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1775 (2d ed. 1986)). In this case, the Defendants' failures to establish community residential services and supports sufficient to avoid unnecessary institutionalization, to provide a meaningful informed choice process, and to ensure a functioning PASRR system are precisely the conduct Rule 23(b)(2) class actions were designed to address. Accordingly, the Individual Plaintiffs meet the requirements of Rule 23(b)(2).

Therefore, Plaintiffs request that the Court provisionally certify for settlement purposes the proposed class, as defined above and in the proposed Settlement Agreement, and appoint Individual Plaintiffs as class representatives and Plaintiffs' Counsel as Class Counsel.

## V.      The Proposed Settlement Agreement is Fair, Reasonable, and Adequate and Should Be Preliminarily Approved.

As described above, after determining that the class should be certified for settlement purposes, the next stage requires the court "to conduct a 'searching,' 'careful,' and 'rigorous' inquiry before preliminarily approving a settlement." *Grenier,* 344 F.R.D. at 362 (quoting Rule 23(e)(1)(B)). While the proponents bear the burden "to show that the settlement is reasonable," there is a presumption in favor of settlement. *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) (citing *Durrett v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990)).

A "fair, reasonable, and adequate" determination requires that a district court "'consider [ ] whether': (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate ... and (D) the proposal treats class members equitably relative to each other." *Cohen v. Brown Univ.*, 16 F.4th 935, 943 (1st Cir. 2021) (citing Fed. R. Civ. P. 23(e)(2)).

A.    *The Proposed Class Representatives and Plaintiffs' Counsel Adequately Represented the Proposed Settlement Class.*

To evaluate whether the Settlement Class has been adequately represented during litigation and settlement, the Court must (1) consider whether there exist "conflicts of interest between named parties and the class they seek to represent," *Cohen*, 16 F.4th at 945 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)) (internal quotation omitted), and (2) determine that Plaintiffs' Counsel are qualified and experienced and "there is an assurance of vigorous prosecution of the action." *Kristina Loughlin v. VI-JON, LLC*, No. CV 20-11555-MLW, 2024 WL 1347092, at *15 (D. Mass. Mar. 29, 2024).

First, there is no conflict between class representatives and absent class members. Class representatives are people with disabilities living in Massachusetts nursing facilities who want to live in the community with appropriate supports, and who in some instances need additional services while in the nursing facility to address their serious mental illness. Absent class members likewise do not oppose community placement and will similarly benefit from additional choices and supports outlined in the Agreement. Additionally, the Individual Plaintiffs share numerous interests and characteristics with the proposed Settlement Class.[10]

---

[10] *See* Sec. IV.A.3, *supra.*

Second, Plaintiffs' Counsel adequately represented the proposed Settlement Class. The adequacy inquiry under Rule 23(e) overlaps substantially with the requirements imposed under Rule 23(a)(4). *Cohen*, 16 F.4th at 945 (citing 4 William B. Rubenstein, Newberg on Class Actions § 13:49 (5th ed. 2021 Suppl.)). As demonstrated above,[11] Plaintiffs retained experienced and competent counsel with deep experience negotiating class action settlements on behalf of people with disabilities.[12] Counsel invested significant time and resources in initial settlement negotiations, litigation, and the most recent months-long settlement negotiation process that led to the proposed Agreement.[13]

B.    *The Settlement Agreement Is the Product of Arm's Length Negotiations.*

Whether an agreement was the product of arm's length negotiations considers the extent to which discovery was engaged prior to mediation, the mediation process and timeline, and any fees negotiated as part of the agreement. *Bacchi v. Mass. Mut. Life Ins. Co.,* No. CV 12-11280-DJC, 2017 WL 5177610, at *2 (D. Mass. Nov. 8, 2017): *Grenier*, 344 F.R.D. at 366.

Plaintiffs' Counsel conducted a lengthy investigation into the Defendants' long-term care system, and then attempted to resolve this litigation before its filing. After filing, they filed a motion for class certification and opposed Defendants' dispositive motions; participated in discovery, including depositions; propounded and responded to requests for production; and retained consulting experts. After this initial phase of litigation, they participated in an intensive and ultimately fruitful mediation, which included multiple meetings with high-level state

---

[11] *See* Sec. IV.A.4, *supra*.
[12] *See, e.g.*, *Rolland*, 1999 WL 34815562; *Hutchinson*, No. 07-30084-MAP; *Kenneth R.*, 293 F.R.D. 254; and *Steward*, 315 F.R.D. 472.
[13] Plaintiff's Counsel negotiated the terms of the proposed Settlement Agreement without regard to payment of attorneys' fees and costs, and those terms were left until after the substantive relief had been negotiated. The Plaintiffs will separately address the reasonableness and appropriateness of the Agreement's fee provision (¶ 75) in a separate memorandum submitted in conjunction with the fairness hearing.

officials and multiple requests to the Court to stay or extend the stay of litigation, in order for the parties to resolve outstanding issues. *See Grenier*, 344 F.R.D. at 366 (noting that where "'the parties negotiated at arm's length and conducted sufficient discovery,' there is a presumption that a negotiated settlement is within the range of reasonableness." (quoting *Cohen*, 16 F.4th 935)).

> C.     *The Settlement Agreement Provides Class Members Adequate Relief.*

When assessing adequacy of relief, courts examine the overall value of the agreement, as well as compare the proposed settlement with the likely result of litigation. *In re Compact Disc Minimum Advertised Price Antitrust Litig*., 216 F.R.D. at 207; *see also Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) ("The district court considers a 'laundry list[ ] of factors' pertaining to the reasonableness of a class action settlement, but 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'" (quoting *Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 44)).

As demonstrated in detail above,[14] the value of this proposed Agreement to class members is enormous. The Agreement extends case management services to each of the approximately 20,000 class members and residential and housing supports to at least 2,400. In addition, it requires expansion of residential services over the eight-year term across a variety of community settings. In contrast, litigating the issue may take years, with the outcome uncertain. The time required to litigate is particularly significant in this case, given the urgency of timely relief, as demonstrated by the distressing death of named Plaintiff, John Simmons, in July 2023.

> D.     *The Settlement Agreement Treats Class Members Equitably.*

---

[14] *See* Sec. III *supra*.

In addition, the Named Plaintiffs will receive no specific relief for themselves in the proposed Agreement, and instead will benefit only insofar as the unnamed class members' benefit. *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 75 (D. Mass. 1999) (evaluating whether "the settlement benefits are fairly distributed among the Class"). This applies both to the case management services and application for the 2,400 added supported housing opportunities, as well as the PASRR services for the sub-group of people with serious mental illness.

## VI. The Proposed Notice to the Settlement Class and Notice Plan Satisfy Both Rule 23(e) and Due Process Requirements.

Once the Court has determined that it will likely certify the proposed Settlement Class and approve the proposed Settlement Agreement, "it must direct notice to all class members who would be bound by the Agreement." *Grenier*, 344 F.R.D. at 368 (citing Fed. R. Civ. P. 23(e)(1)(B)). Rule 23(c) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Parties have agreed upon a proposed Notice to the Class, a Summary Notice for publication, and a plan for disseminating the Notice in an effective and comprehensive manner. The proposed Notice has been drafted in accessible language to apprise class members of this action, the proposed Agreement, and their right to object.[15] The plan provides that the Notice will be distributed to all Aging Service Access Points administered by the Commonwealth's Executive Office of Elder Affairs; the Independent Living Centers, administered by the

---

[15] Because Plaintiffs seek certification of a Rule 23(b)(2) class, the Settlement Agreement does not provide for an opt-out provision and, accordingly, the Notice does not include such an option. *See Wal-Mart Stores, Inc.*, 564 U.S. at 363 (noting that Rule 23(b)(2) "does not require that class members be given notice and opt out rights").

Commonwealth's Executive Office of Health and Human Services; and various disability and social service organizations that will be identified by the Plaintiffs. These entities will be instructed to distribute copies of the Notice to individuals in nursing facilities. Moreover, Plaintiff Massachusetts Senior Action Council will share the Notice with its members. In addition, the Defendants will ensure the publication of a Summary Notice in the major newspapers of the Commonwealth. The Parties designed this plan to provide class members "with the 'best notice practicable under the circumstances, including notice to all members who can be identified through reasonable effort.'" *Bussie*, 50 F. Supp. 2d at 68 (quoting Fed. Rule Civ. P. 23(c)(2)). Finally, the Notice includes both contact information for Plaintiffs' counsel who can respond to questions or concerns from individuals in nursing facilities, and a name and address to send any formal objections that are filed with the Court.

## VII.    Conclusion

For the foregoing reasons, Plaintiffs request that the Court: (1) preliminarily approve the proposed Settlement Agreement; (2) provisionally certify the proposed class for settlement purposes, appointing David Marsters, Lorraine Simpson, Sherri Currin, Carole Chojnacki, Richard Caouette, and Donald Grant as class representatives, and Plaintiffs' Counsel as Class Counsel; (3) approve the Notice and the distribution plan; (4) set a date at least four weeks after the Court grants preliminary approval as the deadline for submission of any objections to the proposed Settlement Agreement; and (5) schedule a fairness hearing for at least ten days after the deadline for class members to object to the proposed Settlement Agreement, or such time thereafter as is convenient for the Court.

Respectfully submitted,

/s/ *Steven J. Schwartz*
Steven J. Schwartz (Bar No. 448440)
Kathy Walker (Pro hac vice)
Center for Public Representation
5 Ferry Street
Easthampton, MA 01027
413-586-6024
Email: sschwartz@cpr-ma.org
Email: kwalker@cpr-ma.org

Deborah Filler (Bar No. 545478)
Luc Figueiredo Miller (Bar No. 711863)
Gary Klein (Bar No. 560769)
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
Email: dfiller@gbls.org
Email: LFigueiredoMiller@gbls.org
Email: gklein@gbls.org

Regan Bailey (Pro hac vice)
Eric Carlson (Pro hac vice)
Justice in Aging
1444 I Street, NW, Suite 1100
Washington, DC  20005
Phone: (202) 683-1990
E-mail: rbailey@justiceinaging.org
E-mail: ecarlson@justiceinaging.org

Dean Richlin (Bar No. 419200)
Kristyn Bunce DeFilipp (Bar No. 676911)
Jeremy Meisinger (Bar No. 688283)
Andrew London (Bar No. 690782)
Foley Hoag LLP
155 Seaport Blvd., #1600
Boston, MA 02210
Email: drichlin@foleyhoag.com
Email: KBunceDeFilipp@foleyhoag.com
Email: jmeisinger@foleyhoag.com
Email: alondon@foleyhoag.com

*Attorneys for Plaintiffs*

April 16, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that the above document has been served this day upon all counsel of record for the Plaintiffs by electronic mail:

/s/ Andrew London
Andrew London

April 16, 2024