## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID MARSTERS, | ) | |
| by his next friend, Nancy Pomerleau; | ) | |
| LORRAINE SIMPSON, by her guardian, Sara Spooner; | ) | |
| SHERRI CURRIN, by her guardian, Sara Spooner; | ) | |
| CAROLE CHOJNACKI, by her guardian, Sara Spooner; | ) | |
| RICHARD CAOUETTE, by his guardian, Sara Spooner; | ) | |
| DONALD GRANT, by his guardian, Sara Spooner, | ) | |
| on behalf of themselves | ) | |
| and other similarly situated persons; and | ) | |
| MASSACHUSETTS  SENIOR ACTION COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. |
| | ) | 1:22-cv-11715-NMG |
| v. | ) | |
| | ) | |
| MAURA HEALEY, in her official capacity | ) | |
| as Governor of the Commonwealth of Massachusetts; | ) | |
| KATE WALSH, in her official capacity | ) | |
| as Secretary, Executive Office of Health and | ) | |
| Human Services; | ) | |
| MATTHEW GORZKOWICZ, in his official capacity | ) | |
| as Secretary of the Executive Office of Administration | ) | |
| and Finance; | ) | |
| ELIZABETH CHEN, in her official capacity as | ) | |
| Secretary, Executive Office of Elder Affairs; | ) | |
| and MICHAEL LEVINE, in his official capacity | ) | |
| as Assistant Secretary of MassHealth, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## FINAL APPROVAL OF SETTLEMENT AGREEMENT
## AND CERTIFICATION OF SETTLEMENT CLASS

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................ 1

II.     PROCEDURAL BACKGROUND ..................................................................................... 1

III.    THE PROPOSED SETTLEMENT .................................................................................... 3

IV.     CLASS NOTIFICATION AND RESPONSES .................................................................. 5

V.      ARGUMENT ...................................................................................................................... 7

   A.    Final Certification of the Settlement Class is Appropriate. .................................... 7

      1.    The proposed settlement class satisfies the prerequisites of Rule 23(a) ...................... 8

      2.    The proposed settlement class meets the requirements of Rule 23(b)(2). ................... 10

   B.    The Agreement is Fair, Reasonable, and Adequate. ............................................. 11

      1.    Legal Standard ............................................................................................................ 11

      2.    Experienced class counsel have capably represented the class. ................................. 13

      3.    The settlement was negotiated at arm's length. ......................................................... 13

      4.    The Agreement provides adequate, and substantial, relief for the class ..................... 14

      5.    The Agreement treats class members equitably relative to each other ....................... 17

   C.    The Few Objections to the Settlement Here Do Not Weigh Against Its Approval .......... 18

VI.     CONCLUSION .................................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)................................................................................11

*Andrews v. Bechtel Power Corp.,*
    780 F.2d 124 (1st Cir. 1985)..................................................................10

*Brito v. Barr,*
    395 F. Supp. 3d 135 (D. Mass. 2019)....................................................10

*Cohen v. Brown Univ.,*
    16 F.4th 935 (1st Cir. 2021)...................................................................12

*Connor B. ex rel. Vigurs v. Patrick,*
    272 F.R.D. 288 (D. Mass. 2011).........................................................8, 9

*D.G. v. Devaughn,*
    594 F.3d 1188 (10th Cir. 2010) ...............................................................8

*Fitzmorris v. Weaver,*
    No. 21-cv-25, 2023 U.S. Dist. LEXIS 209980 (D.N.H. Nov. 27, 2023)...................................8

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982).................................................................................8

*Hutchinson v. Patrick,*
    No. 07-30084-MAP (D. Mass. Sept. 26, 2007 (ECF No. 35) & Oct. 4, 2007
    (ECF No. 39)) .........................................................................................9

*Kenneth R. v. Hassan,*
    293 F.R.D. 254 (D.N.H. 2013) ...............................................................9

*Murray v. Grocery Delivery E-Services USA Inc.,*
    55 F.4th 340 (1st Cir. 2022)...................................................................12

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits
    Fund,*
    582 F.3d 30 (1st Cir. 2009).....................................................................12

*Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.,*
    No. 15-cv-30024, 2020 U.S. Dist. LEXIS 53643 (D. Mass. Mar. 27, 2020) .................. *passim*

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.,*
    247 F.R.D. 253 (D. Mass. 2008)..............................................................8

*Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) .................................................................................................8

*Olmstead v. L.C.*,
   527 U.S. 581 (1999) ........................................................................................................2

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) ...........................................................................................13

*Reid v. Donelan*,
   297 F.R.D. 185 (D. Mass. 2014) ...................................................................................11

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass 2000) ........................................................................................16

*Rolland v. Cellucci*,
   No. 98-30208-KPN, 1999 WL 34815562 (D. Mass. Feb. 2, 1999) .................................9

*The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
   Case No. 15-cv-0224-YGR, 2016 U.S. Dist. LEXIS 10277 (N.D. Cal. Jan. 25,
   2016) ..............................................................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................................8

**Statutes**

American with Disabilities Act .............................................................................1, 2, 9, 11

Medicaid Act .............................................................................................................................1

Rehabilitation Act ..............................................................................................................1, 2,11

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................................8

Fed. R. Civ. P. 23(a) .........................................................................................................7, 10

Fed. R. Civ. P. 23(b) ...............................................................................................................7

Fed. R. Civ. P. 23(b)(2) .................................................................................................7, 10, 11

Fed. R. Civ. P. 23(e) ...............................................................................................................3

Fed. R. Civ. P. 23(e)(2) .....................................................................................................11, 12

Fed. R. Civ. P. 23(e)(2)(A) ....................................................................................................12

Fed. R. Civ. P. 23(e)(2)(B) ...............................................................................12

Fed. R. Civ. P. 23(e)(2)(C) ....................................................................12, 14, 15

Fed. R. Civ. P. 23(e)(2)(C)(ii) ..........................................................................16

Fed. R. Civ. P. 23(e)(2)(C)(iii) .........................................................................17

Fed. R. Civ. P. 23(e)(2)(D) ...............................................................................12

Fed. R. Civ. P. 23(e)(3) ....................................................................................14

**Other Authorities**

Dignity Alliance Massachusetts, *Marsters Lawsuit* (April 18, 2024),
    https://dignityalliancema.org/2024/04/18/marsters-lawsuit/ ....................................7

Disability Law Center, *Marsters v. Healey – NOTICE OF SETTLEMENT
    AGREEMENT*, https://www.dlc-ma.org/2024/05/02/marsters-v-healey-notice-
    of-settlement-agreement/ ...............................................................................7

Editorial, *State Commits to Moving 2,400 People Out of Nursing Homes*, Boston
    Globe (Apr. 17, 2024) ),
    https://www.bostonglobe.com/2024/04/17/opinion/marsters-healey-nursing-
    home-housing-disability/ ...........................................................................6, 15

Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3.10 (4th ed.
    2002) ........................................................................................................8

Jason Laughlin, *Massachusetts Commits $1 Billion to Move Thousands Out of
    Nursing Homes in Wake of Lawsuit Settlement*, Boston Globe (Apr. 21, 2024),
    https://www.bostonglobe.com/2024/04/21/metro/nursing-home-settlement-
    disabled-massachusetts/ ........................................................................6, 14, 17

Mass. Senior Care Ass'n, *State Reaches Court Settlement To Move 2,400 People
    From Nursing Homes To Community* (Apr. 19, 2024),
    https://www.maseniorcare.org/member-resources/e-news-updates/state-
    reaches-court-settlement-move-2400-people-nursing-homes.................................7

Meghan Smith, '*Transformative' Agreement Will Help Thousands of People
    Leave Mass. Nursing Homes*, WGBH (Apr. 17, 2024),
    https://www.wgbh.org/news/local/2024-04-17/transformative-agreement-will-
    help-thousands-of-people-leave-mass-nursing-homes ...................................1, 6, 14

Press Release, Executive Office of Health and Human Services, *Agreement Reached in Class Action Lawsuit to Expand Opportunities for Individuals in Nursing Homes to Return to Community* (Apr. 16, 2024), https://www.mass.gov/news/agreement-reached-in-class-action-lawsuit-to-expand-opportunities-for-individuals-in-nursing-homes-to-return-to-community ........................................................................................................5

## I.    INTRODUCTION

The Plaintiffs respectfully submit this Memorandum of Law in Support of the Parties Joint Motion for Final Approval of the Settlement Agreement and Certification of the Settlement Class, filed herewith, and request the Court approve the Settlement Agreement submitted to the Court for preliminary approval on April 16, 2024. (ECF No. 152-1, hereinafter the "Agreement"). Through the Agreement, the Commonwealth has committed to undertake substantial obligations over a period of eight years to resolve on a class-wide basis the Plaintiffs' claims of discrimination under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, and violations of the Medicaid Act. These include commitments to create a comprehensive in-reach and informed choice program to all individuals with disabilities in nursing facilities; to provide behavioral health and case management services to people while in these facilities; and to develop new community residential services and supports and then transition at least 2,400 class members from nursing facilities into integrated settings in the community, among other detailed obligations outlined in the 27-page Agreement. As one news publication put it, the Agreement is nothing short of "transformative."[1] For the reasons explained herein, the Court has should approve the Agreement as fair, reasonable, and adequate. Further, for purposes of effectuating this settlement, the Court also should permanently certify the proposed class that it previously approved on a preliminary basis.

## II.    PROCEDURAL BACKGROUND

On October 11, 2022, the Plaintiffs initiated this federal class action lawsuit on behalf of seven individuals with disabilities in nursing facilities in Massachusetts, the Massachusetts

---

[1] Meghan Smith, *'Transformative' Agreement Will Help Thousands of People Leave Mass. Nursing Homes*, WGBH (Apr. 17, 2024), https://www.wgbh.org/news/local/2024-04-17/transformative-agreement-will-help-thousands-of-people-leave-mass-nursing-homes.

Senior Action Council ("MSAC"), and a putative class of approximately 20,000 Medicaid-eligible people with disabilities in nursing facilities in the Commonwealth. (ECF No. 1.) The lawsuit challenges class members' unnecessary institutionalization under the ADA and Section 504 of the Rehabilitation Act, and the lack of appropriate evaluations and specialized services for people with serious mental illness ("SMI") under the Pre-Admission Screening and Resident Review ("PASRR") provisions of the Medicaid Act. The Complaint alleges that the Commonwealth has failed to provide needed community residential services and supports, and, as a result, thousands of individuals with medical conditions, physical disabilities, and mental illness must live in segregated nursing facilities rather than in integrated settings in the community, as required by the Supreme Court's decision in *Olmstead v. L.C.,* 527 U.S. 581 (1999).

Notably, Plaintiffs' counsel's efforts to address these legal violations began long before filing the Complaint. *See* Affidavit of Steven J. Schwartz in Support of Plaintiffs' Memorandum in Support of Final Approval of Settlement Agreement ("Schwartz Approval Aff."), ¶ 2. As discussed further in the accompanying Schwartz Approval Affidavit, Plaintiffs' counsel engaged in a year-long pre-filing investigation, obtained and analyzed substantial volumes of data from the Commonwealth through records requests, and participated in a series of pre-filing settlement negotiations with the Executive Office of Health and Human Services (EOHHS).

After the Defendants answered the Complaint, the Parties proceeded to engage in discovery and motion practice, including full briefing on the Plaintiffs' currently pending Motion for Class Certification,[2] and on the Defendants' currently pending Motion to Dismiss the Named

---

[2] *See* Pls.' Mot. Certify Class (ECF No. 70) and Am. Mem. (ECF No. 76); Defs.' Opp'n Mot. Certify Class (ECF No. 108); Pls.' Reply (ECF Nos. 116-120); Defs.' Sur-reply & Resp. First Statement of Interest Filed by the United States (ECF No. 133).

Plaintiffs.[3] In September 2023, the United States Department of Justice filed Statements of Interest in support of Plaintiffs on both motions. (ECF Nos. 129, 132.) During this period of active litigation, former lead plaintiff John Simmons died while still in the nursing facility. (ECF No. 92.)

On October 18, 2023, the Parties sought a joint litigation stay to pursue mediation. (ECF No. 140.)  Mediation began on October 20, 2023, and continued through March 22, 2024. With the support of the jointly-selected mediator, and more than twenty-four mediation sessions, the Parties reached the Agreement.

On April 16, 2024, the Parties jointly submitted the Agreement for preliminary approval by the Court. (ECF No. 152-1.) On April 22, 2024, the Court certified the proposed class on a preliminary basis, granted preliminarily approval of the Agreement, endorsed the proposed notice to the class, and scheduled a hearing to determine whether the Agreement is fair, reasonable, and adequate, pursuant to Fed. R. Civ. P. 23(e). (ECF No. 156.).

As discussed further below, the Parties then distributed and published the class action notice and undertook other efforts to inform the class of the settlement. The Agreement prompted coverage during this period from major media outlets in the Commonwealth.

## III.    THE PROPOSED SETTLEMENT

As described in the Agreement and the Parties' Joint Motion for Preliminary Approval of Class Action Settlement and to Certify a Class for Settlement Purposes, (ECF Nos. 152 and 152-1), the Settlement Class consists of:

> "All present or future Medicaid-eligible persons who: (i) are Massachusetts residents, (ii) have attained age 22, (iii) reside (at any time before the Termination Date) in a nursing facility within the

---

[3] Defs.' Mot. Dismiss Named Pls.' Claims (ECF No. 98); Pls.' Opp'n Mot. Dismiss (ECF No. 127); Defs.' Reply (ECF No. 139).

> Commonwealth for 60 days or more, and (iv) either (a) have a "disability" as defined in the ADA and are qualified for and would not oppose transition to a community-based setting, or (b) have PASRR SMI as determined pursuant to a Level II PASRR evaluation."

The Agreement lays out a set of obligations that the Commonwealth has committed to undertake over the course of an eight-year term. It groups these obligations under sections relating to: "Nursing Facility In-Reach, Informed Choice, and Transition Planning" (Sec. II); "Coordination of Behavioral Health Services, Including Specialized Services, for MassHealth Members with PASRR SMI in Nursing Facilities" (Section III); "Residential Services and Housing Supports Capacity" (Sec. IV); "Nursing Facility Admission and Services" (Sec. V); and "Nursing Facility Transition Time Frames and Minimum Total Transitions" (Sec. VI). In addition, the Agreement requires the Commonwealth to provide the Plaintiffs with scheduled data reports relating to these obligations, and to meet with the Plaintiffs quarterly to review progress and discuss implementation. *See* ECF No. 152-1, Secs. VII ("Data Collection and Reporting") & IX.C ("Implementation").

As discussed in greater detail in Plaintiffs' Memorandum in Support of the Joint Motion for Preliminary Approval (ECF No. 153), the Agreement details the manner and timeline in which the Commonwealth will meet these obligations. This includes, for example, outlining three distinct programs  for providing in-reach to class members in nursing facilities and resources to make informed choices about transitioning to the community, including: (1) the Community Transition Liaison Program ("CTLP") operated by the Executive Office of Elder Affairs (ECF No. 152-1, Sec. II.A, ¶¶ 3-16); (2) the Money Follows the Person program operated by the Executive Office of Health and Human Services' Office of MassHealth (*id.* Sec. II.B., ¶¶ 17-24); and (3) an expanded case management program operated by the Department of Mental

Health ("DMH") for persons with SMI identified through the PASRR evaluation process (*id.* Sec. II.C, ¶¶ 25-35). The Agreement requires the Commonwealth to provide specialized and other behavioral health services and service coordination to people with SMI through the Behavioral Health Community Partners ("BH CP") care coordinators or managed care programs. (*Id.* Sec. III, ¶¶ 36-45.) The Agreement describes three types of community residential services and supports to enable no fewer than 2,400 class members to transition from nursing facilities to the community, including provider-operated group homes, non-residential services with housing supports, and home modifications for people with existing housing with accessibility barriers. (*Id.* Sec. IV, ¶¶ 46-54; Sec. VI, ¶¶ 58-64.)[4]

## IV.    CLASS NOTIFICATION AND RESPONSES

Immediately following the Court's preliminary approval of the Agreement, (ECF No. 156), the Parties began distributing the Notice to Class Members (ECF No. 152-2) to the entities identified in the Court's order, including nursing facilities, Aging Service Access Points, Independent Living Centers, and the social service organizations included with the Joint Motion for Preliminary Approval (ECF No. 152-4). They also published the Summary Notice (ECF No. 152-3) in the newspapers identified in connection with the Joint Motion (ECF No. 152-5). *See* Schwartz Approval Aff., ¶ 9.

The Parties jointly issued a press release with statements from the Parties and Plaintiffs' counsel.[5] Per the release, Governor Maura Healey commented that, "This settlement is a natural

---

[4] The Agreement also provides for payment of an agreed-upon sum for Plaintiffs' attorneys' fees, which provision is discussed at length in the Plaintiffs' Memorandum in Support of Agreed-To Award of Attorneys' Fees and Costs, filed concurrently with this Memorandum.

[5] Press Release, Executive Office of Health and Human Services, *Agreement Reached in Class Action Lawsuit to Expand Opportunities for Individuals in Nursing Homes to Return to Community* (Apr. 16, 2024), https://www.mass.gov/news/agreement-reached-in-class-action-lawsuit-to-expand-opportunities-for-individuals-in-nursing-homes-to-return-to-community.

next step forward as our administration expands community living options available for individuals residing in nursing facilities." Attorney General Andrea J. Campbell stated that she was grateful to her team "for working with the administration and advocates to reach this settlement that will certainly empower older adults and individuals with disabilities and mental illness to receive appropriate care while living in the community, instead of in a nursing facility." Media outlets in the Commonwealth reported positively on the Agreement.[6]

As described in the accompanying affidavit of Steven J. Schwartz, Plaintiffs' counsel then received 76 calls, 9 emails, and 2 letters in response to the Notice, primarily from individuals currently residing in nursing facilities and their families inquiring about accessing the services described in the Agreement. Schwartz Approval Aff. ¶¶ 10-11. Each call was logged and returned promptly, providing callers with details about the Agreement and, where appropriate, with whom to contact for details about services (*e.g.*, the appropriate CTLP team). *Id.*

Plaintiffs' counsel then undertook additional efforts to expand the reach of the Notice. Throughout May 2024, counsel from the Center for Public Representation (CPR) led four 1-hour webinars for front line staff of community service agencies, providers, professionals, and stakeholders, attended by approximately 135 professionals and program staff. *Id.* ¶ 13. CPR presented another webinar for families and guardians attended by 20 people and then co-led an additional information session for attorneys and advocates that reached over 30 legal

---

[6] *See* Meghan Smith, '*Transformative' Agreement Will Help Thousands of People Leave Mass. Nursing Homes*, WGBH (Apr. 17, 2024), https://www.wgbh.org/news/local/2024-04-17/transformative-agreement-will-help-thousands-of-people-leave-mass-nursing-homes; Jason Laughlin, *Massachusetts Commits $1 Billion to Move Thousands Out of Nursing Homes in Wake of Lawsuit Settlement*, Boston Globe (Apr. 21, 2024), https://www.bostonglobe.com/2024/04/21/metro/nursing-home-settlement-disabled-massachusetts/; Editorial, *State Commits to Moving 2,400 People Out of Nursing Homes*, Boston Globe (Apr. 17, 2024), https://www.bostonglobe.com/2024/04/17/opinion/marsters-healey-nursing-home-housing-disability/.

professionals. *Id.* ¶ 14. And counsel from Greater Boston Legal Services ("GBLS") presented information about the Agreement to more than 40 members of MSAC. *Id.* After providing the Notice to the social service organizations identified in connection with the Joint Motion, GBLS repeatedly followed up to urge the organizations to further distribute the Notice to the organizations' emails lists and contacts, *id.* ¶ 12, and several organizations did further publicize the Agreement and Notice.[7]

     Plaintiffs have received 5 written objections to the Agreement, which are discussed further in Section V.C, *infra*.

## V.    ARGUMENT

### A.  Final Certification of the Settlement Class is Appropriate.

     Before certifying a class for settlement purposes, the Court must determine that the proposed class meets the prerequisites for certification under Federal Rule of Civil Procedure 23(a) and satisfies at least one of the categories of Rule 23(b). The proposed class here satisfies the prerequisites of numerosity, commonality, typicality, and adequacy, and it includes a Rule 23(b)(2) class that seeks only injunctive or declaratory relief applicable to the class as a whole. The issue of class certification has been briefed extensively in the papers filed in connection with Plaintiffs' pending Motion for Class Certification, (ECF Nos. 70-71, 76), and again in the Plaintiff's Memorandum in Support of the Joint Motion for Preliminary Approval,

---

[7] *See, e.g.*, Mass. Senior Care Ass'n, *State Reaches Court Settlement To Move 2,400 People From Nursing Homes To Community* (Apr. 19, 2024), https://www.maseniorcare.org/member-resources/e-news-updates/state-reaches-court-settlement-move-2400-people-nursing-homes; Disability Law Center, *Marsters v. Healey – NOTICE OF SETTLEMENT AGREEMENT*, https://www.dlc-ma.org/2024/05/02/marsters-v-healey-notice-of-settlement-agreement/; Dignity Alliance Massachusetts, *Marsters Lawsuit* (April 18, 2024), https://dignityalliancema.org/2024/04/18/marsters-lawsuit/.

(ECF No. 153). Those arguments are hereby incorporated by reference, and, accordingly, the argument here further summarizes these points.

1. <u>The proposed settlement class satisfies the prerequisites of Rule 23(a).</u>

***Numerosity:*** The Settlement Class is sufficiently large that joinder is impractical. The threshold for numerosity is not high. *See Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 292 (D. Mass. 2011) (observing that "[g]enerally, classes of forty or more" suffice). Plaintiffs have produced evidence estimating the class numbers in the tens of thousands, including at least 10,000 people who could be eligible for residential services and thousands more who will receive case management and in-reach services. *See* Detmers Aff., App. C, at 6 (ECF No. 70-1, Ex. 1) (Minimum Data Set ("MDS") data indicating that 11,402 people with disabilities in nursing facilities are appropriate for discharge to the community).

***Commonality and Typicality:*** Courts recognize that the requirements of commonality and typicality "tend to merge" in the Rule 23 analysis. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Commonality is satisfied where the class claims "'depend upon a common contention,' the 'truth or falsity' of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Fitzmorris v. Weaver*, No. 21-cv-25, 2023 U.S. Dist. LEXIS 209980, at *40 (D.N.H. Nov. 27, 2023) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  "[T]here need be only a single issue common to all members of the class." *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 263-64 (D. Mass. 2008) (quoting Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3.10 (4th ed. 2002)). Typicality requires the named Plaintiffs' claims be typical of the absent class members, though "[t]he claims of the class need not be identical." *Nat'l Ass'n of the Deaf*, 2020 U.S. Dist. LEXIS 53643, at *5; *see also D.G. v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010)

("[T]ypicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."); *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ("Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."); *Rolland v. Cellucci*, No. 98-30208-KPN, 1999 WL 34815562, at *7 (D. Mass. Feb. 2, 1999) ("The fact that individual class members may have somewhat different needs, . . . or may be entitled to or need different services, does not justify denying class certification.").

Here, as in *Connor B.*, "[b]ecause Plaintiffs have identified specific systemic failures that expose the entire Plaintiff class to an unreasonable risk of harm, the typicality requirement is satisfied." 272 F.R.D. at 297. Courts certifying classes in ADA nursing facility cases like this one have also found commonality satisfied given evidence that the defendant agencies had "failed to provide appropriate Medicaid habilitative services," whether they had "failed to provide specialized services" as required by the Nursing Home Reform Amendments, and whether they had failed to provide services "in the most integrated setting appropriate, in violation of the Americans with Disabilities Act." 1999 U.S. Dist. LEXIS 23814, at *16-17; *Hutchinson v. Patrick,* No. 07-30084-MAP (D. Mass. Sept. 26, 2007 (ECF No. 35) & Oct. 4, 2007 (ECF No. 39)); *see also Kenneth R. v. Hassan*, 293 F.R.D. 254, 267-68 (D.N.H. 2013) (finding commonality met where the "dearth of available community-based services within New Hampshire's mental health system" was a "systemic condition" that resulted from "the way the State manages the system" and which harmed all class members through "a serious risk of unnecessary institutionalization").

*Adequacy:* The named plaintiffs and their counsel have fairly and adequately represented the proposed class, and, indeed, counsel have committed to continue to do so throughout the implementation of the Agreement's eight-year term. (*See* ECF No. 152-1, Sec. IX.C.) Adequacy has two components: (1) the attorneys representing the class must be qualified and competent; and (2) the class representatives must not have antagonistic or conflicting interests with the unnamed members of the class. *See, e.g., Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985); *Brito v. Barr*, 395 F. Supp. 3d 135, 147-48 (D. Mass. 2019). There are no conflicting interests between the class representatives and other members of the class—all of whom share a common interest in expanding informed choice and access to community residential settings and case management services. And the class has been represented—through zealously contested litigation in this case—by highly experienced counsel with specialized knowledge of both disability-rights class action litigation and the Commonwealth's systems for implementing the complex requirements of the federal Medicaid and nursing-facility statutory and regulatory regimes. *See* Affidavit of Steven J. Schwartz in Support of Plaintiffs' Memorandum on Attorneys' Fees ("Schwartz Fee Aff."), ¶¶ 2-14 (reviewing qualifications of Plaintiffs' counsel). Counsel have invested substantial time, from pre-litigation investigation and negotiation, through litigation, discovery, work with experts, motion practice, and dozens of hours of mediation sessions. *Id.* ¶¶ 21-22 (describing complexity of litigation and counsel's efforts).

2.  The proposed settlement class meets the requirements of Rule 23(b)(2).

Plaintiffs seek class certification under Fed. R. Civ. P. 23(b)(2), such that, in addition to meeting the requirements of Rule 23(a), they must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief

10

or corresponding declaratory relief is appropriate respecting the class as a whole." As courts in the District of Massachusetts have remarked under similar circumstances, "[t]his is a quintessential Rule 23(b)(2) case." *Nat'l Ass'n of the Deaf v. Mass. Inst. of Tech.*, No. 15-cv-30024, 2020 U.S. Dist. LEXIS 53643, at *7 (D. Mass. Mar. 27, 2020) (ADA and Rehabilitation Act violations case); *Reid v. Donelan*, 297 F.R.D. 185, 193 (D. Mass. 2014) ("[C]ivil rights actions like this one, where a party charges that another has engaged in unlawful behavior toward a defined group, are 'prime examples' of Rule 23(b)(2) classes") (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997)).

Here, the elements of Rule 23(b)(2) are satisfied, and thus class certification is appropriate, because the Individual Plaintiffs allege systemic civil rights violations and seek declaratory and injunctive relief to benefit the Settlement Class as a whole. Specifically, Plaintiffs allege that the Defendants administer their system of long-term care services for individuals with disabilities in a discriminatory manner, fail to administer their long-term care community programs in a fair and effective manner that accommodates the needs of individuals with disabilities and complex medical needs, fail to provide the community residential services and supports required to avoid unnecessary institutionalization, and fail to provide an effective choice process that allows people with disabilities to understand and make an informed choice about where to live. These systemic failures are precisely the sort of conduct that Rule 23(b)(2) class actions were designed to address.

### B. The Agreement is Fair, Reasonable, and Adequate.

#### 1. Legal Standard

Fed. R. Civ. Pro. 23(e)(2) requires a court to determine whether a proposed settlement that would bind class members is "fair, reasonable and adequate." While courts have developed

extensive lists of factors to consider in this determination, in 2018, Congress amended the Rule to codify a list of "core concerns" that the Advisory Committee labeled "the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), advisory committee note to 2018 amendment. Two procedural factors ask whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). Two substantive factors then consider whether "the relief provided for the class is adequate"—taking into account another subset of four factors—and whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)-(D).

While courts in the District of Massachusetts had previously considered additional factors, the four "core concerns" of the amended Rule 23(e)(2) now drive the analysis. *See Cohen v. Brown Univ.*, 16 F.4th 935, 943-44 (1st Cir. 2021) (noting that "[b]efore 2018, the case law refracted [the Rule 23(e)(2)] standard in a laundry list of factors," before reciting and applying the four factors as amended) (internal quotation omitted); *Murray v. Grocery Delivery E-Services USA Inc.*, 55 F.4th 340, 345 (1st Cir. 2022) (reciting and applying only the factors from the amended Rule); *Nat'l Ass'n for the Deaf v. Mass. Inst. of Tech.*, No. 15-cv-30024, 2020 U.S. Dist. LEXIS 53643, at *8-9 (D. Mass. Mar. 27, 2020) (same). As a practical matter, however, "the ultimate decision by the [district court]" continues to "involve[] balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Cohen*, 16 F.4th at 944 (quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009)).

The Agreement here satisfies each of the Rule's "core concerns," and its substantial advantages for the class far outweigh the risks and delay of further litigation. The Court should thus approve the Settlement Agreement as fair, reasonable, and adequate.

        2.  <u>Experienced class counsel have capably represented the class.</u>

As discussed above in Section V.A.1, class counsel brings decades of experience in disability-rights class action litigation and in the intricacies of the Commonwealth's long-term care systems. Counsel has expended substantial time advocating for the plaintiff class, including more than eighteen months conducting a comprehensive investigation and pre-filing settlement negotiations. *See* Schwartz Approval Aff., ¶¶ 2-5. The litigation itself was highly complex and, at times, fiercely contested. Schwartz Fee Aff. ¶ 22. Ultimately, class counsel obtained an extremely favorable result after a marathon mediation process. Moreover, as noted above, counsel has committed to remaining engaged in implementing the Agreement over its eight-year term.

        3.  <u>The settlement was negotiated at arm's length.</u>

"A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel." *Nat'l Ass'n of the Deaf*, 2020 U.S. Dist. LEXIS 53643, at *11 (citing *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 33 (1st Cir. 2009)). The Agreement here was reached after dozens of hours of mediation sessions facilitated by a mediator with decades of experience, Eric Van Loon. This extensive mediation process involved highly technical discussion of the Commonwealth's long-term care systems to reach agreement on nuanced language in each of the Agreement's provisions. Many of the mediation sessions featured direct participation by senior state officials.

Courts find further support for the neutrality of an agreement where "[t]he parties reached full agreement on the injunctive relief before beginning to negotiate attorneys' fees and costs." *The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, Case No. 15-cv-0224-YGR, 2016 U.S. Dist. LEXIS 10277, *2 (N.D. Cal. Jan. 25, 2016); *Nat'l Ass'n of the Deaf*, 2020 U.S. Dist. LEXIS 53643, at *12. The Parties here spent dozens of hours of mediation sessions, over a span of more than four months, to resolve all substantive provisions of the Agreement before ever discussing attorneys' fees and costs.

    4.   <u>The Agreement provides adequate, and substantial, relief for the class.</u>

Rule 23(e)(2)(C) requires the Court to consider whether the relief provided is adequate, when taking into account four sub-factors:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). Only the first three of these are relevant here, as there is no additional agreement here to identify under Rule 23(e)(3), other than the Agreement. In assessing the specific sub-factors identified in the Rule, the Court should first consider the benefits provided by the Agreement.

The relief provided in the Agreement is nothing short of—as one publication characterized it—"transformative."[8] *The Boston Globe* summarized its reporting of the settlement by noting that "[n]ursing home residents should find it dramatically easier to return to

---

[8] Meghan Smith, *'Transformative' Agreement Will Help Thousands of People Leave Mass. Nursing Homes*, WGBH (Apr. 17, 2024), https://www.wgbh.org/news/local/2024-04-17/transformative-agreement-will-help-thousands-of-people-leave-mass-nursing-homes.

their communities after Massachusetts committed to spending $1 billion over the next eight years for new housing and community support for people seeking to leave long-term care facilities."[9] And the *Globe's* Editorial Board articulated its position in no uncertain terms: "Occasionally, a lawsuit prompts a policy shift that will improve thousands of lives. That's just what happened Tuesday . . . [when] Governor Maura Healey's Executive Office of Health and Human Services moved to settle a lawsuit, Marsters v. Healey."[10]

The most significant benefits of the Agreement include the Commonwealth's commitment to transition at least 2,400 class members from nursing facilities to integrated settings in the community through the expansion of residential services and supports; the commitment to provide coordinated behavioral health services and comprehensive case management services; and the creation of a new in-reach program that will provide in-person information and opportunities to explore community living so that people with disabilities can make an informed choice about where to received needed supports.

Consideration of the Rule 23(e)(2)(C) factors underscores the benefits of the Agreement. First, the "costs, risks and delay of trial and appeal" are substantial. The Plaintiffs are well-aware of the risks of delay, with former lead Plaintiff John Simmons' passing before he could leave the nursing facility. While Plaintiffs are certainly confident of the strength of their claims and of ultimately prevailing at trial, as well as prevailing on class certification and efforts to dismiss the case, as explained in the Department of Justice's briefs in support of Plaintiffs on both motions, there are always risks and uncertainties in class action systemic litigation.  And prevailing on

---

[9] Jason Laughlin, *Massachusetts Commits $1 Billion to Move Thousands Out of Nursing Homes in Wake of Lawsuit Settlement*, Boston Globe (Apr. 21, 2024), https://www.bostonglobe.com/2024/04/21/metro/nursing-home-settlement-disabled-massachusetts/.
[10] Editorial, *State Commits to Moving 2,400 People Out of Nursing Homes*, Boston Globe (Apr. 17, 2024), https://www.bostonglobe.com/2024/04/17/opinion/marsters-healey-nursing-home-housing-disability/.

those motions would only permit the litigation to proceed to further discovery from the Commonwealth, potentially numerous depositions of state officials, additional expert reports, likely summary judgment briefing, and eventual trial. Further, the Commonwealth's zealous defense of this case during the active litigation phase, *see* Schwartz Fee Aff. ¶¶ 21-22, portends particularly drawn-out and contentious litigation in these subsequent phases. With the year-long litigation phase from the Complaint's filing through the commencement of mediation including only partial discovery, it is reasonable to expect future litigation through trial to take at least another two years, and potentially longer. Moreover, and perhaps most significantly, even were Plaintiffs to prevail at trial on some or all of their claims, it is unclear whether Plaintiffs would be able to obtain relief from the Court that is as detailed or comprehensive as that proposed in the Agreement. *Cf. Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass 2000) ("When comparing the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation, there are clearly strong arguments for approving a settlement.") (internal quotation omitted).

Second, while the "method of distributing relief to the class" may more typically be considered in a damages class action—and there are no "class member claims" to "process[]" here, *see* Fed. R. Civ. P. 23(e)(2)(C)(ii)—the Agreement here nonetheless goes to great lengths to assure access to relief for all class members . Notably, the Agreement specifically provides for in-reach and case management services to facilitate informed choice for all people with disabilities in nursing facilities, and it mandates that the services provided through the Agreement are offered in a manner that reflects class members' primary language and cultural background. (*See* ECF 152-1, ¶¶ 10-11, 19-20, 31-32, 39-40.)

Third, as set out in Plaintiffs' separate Memorandum on Attorneys' Fees and the Schwartz Fee Affidavit, the agreed-upon amount of attorneys' fees is exceedingly reasonable in light of the fact that it represents a fraction of Plaintiffs' counsel's actual lodestar. Moreover, the attorneys' fees here were discussed only upon reaching agreement as to all substantive provisions of the Agreement. *See Nat'l Ass'n of the Deaf*, 2020 U.S. Dist. LEXIS 53643, at *12. Finally, the $1.8 million fee award pales in comparison to the Commonwealth's widely-reported commitment of $1 billion to fund the commitments in the Agreement.[11] Thus, the benefits of the Agreement are well beyond "adequate" in light of this proposed award. Fed. R. Civ. P. 23(e)(2)(C)(iii).

     5.   <u>The Agreement treats class members equitably relative to each other.</u>

The Agreement creates and expands on benefits for all class members, and does not establish any hierarchy of access within the class. Notably, the Agreement affords no special access to its benefits for the named Plaintiffs. All of the class members reside in a nursing facility and have a disability, and thus all can benefit from the new in-reach and informed choice program, and from expanded case management services. While not all members of the class are in precisely the same circumstances, all will have equal access to residential services and the opportunity to transition to the community, or the expansion of behavioral health services (or both). To be sure, the Agreement does not guarantee that all class members who desire to leave nursing facilities will be able to transition to the community, but it does not treat preferentially any subset of the class vis-à-vis access to expanded services and supports.

---

[11] *See, e.g.*, Jason Laughlin, *Massachusetts Commits $1 Billion to Move Thousands Out of Nursing Homes in Wake of Lawsuit Settlement*, Boston Globe (Apr. 21, 2024), https://www.bostonglobe.com/2024/04/21/metro/nursing-home-settlement-disabled-massachusetts/.

### C.  The Few Objections to the Settlement Here Do Not Weigh Against Its Approval

The Parties have received only five objections to the settlement, none of which provide a basis not to approve the Agreement. The five people who submitted objections include: Mary E. Klein (on behalf of David R. Klein, hereafter the "Klein Objection"), Beth Tafler (on behalf of Harold Tafler, hereafter the "Tafler Objection"), Sylvia Quatrale (on behalf of Gregory Buchanan, hereafter the "Buchanan Objection"), Richard Davies (the "Davies Objection"), and Kenyon King (the "King Objection").[12] The objections are included in the Appendix to this Memorandum.

These objections do not undermine the appropriateness or reasonableness of the Agreement. The Buchanan Objection primarily objects to the manner in which the Notice was provided to Mr. Buchanan by his nursing facility without explanation, and it raises several questions about how services will be provided in the community. Plaintiffs' counsel has reached out to Ms. Quatrale to provide responses to her questions about services in the community.

The Klein, Tafler, Davies, and King Objections all express a desire to remain resident in a nursing facility, although these preferences were expressed before the Commonwealth has fully implemented its new informed choice program. Specifically, the Klein Objection requests the Court "exclude" David R. Klein from the class and expresses Mr. Klein's disagreement with the Agreement, "which would provide resources for David R. Klein to live in the community in lieu of receiving care in a Nursing Facility." *See* Appendix, at 1. The Tafler Objection states that Mr. Tafler objects because he "has been offered opportunities to return to the community and has

---

[12] Other individuals submitted comments via letter or phone call, or, in the case of Mr. Mark Bourgoin, via letter to the Court (ECF No. 159), but these did not express objection to the Settlement Agreement, so they are not addressed herein.

also had access to appropriate mental health assistance. He is fortunate to be living in this facility." *Id.* at 2. Similarly, Mr. Davies states in his objection that "I wish to remain as I am. I have no desire to pack up and move." *Id.* at 3-4. And the King Objection states that Mr. King is "not able to live in the community now, or in the foreseeable future." *Id.* at 5.

While the effect of the court-approved settlement here would bind all class members to the terms of the Agreement, the Agreement itself does not require *any* individual to leave a nursing facility. In fact, the class is defined to include only individuals who would not oppose transition to the community, or who have a mental illness determined by the PASRR process. Thus, at least from the information provided in the objections by all of these individuals or guardians, they are not likely to be in the plaintiff class. In any event, all services provided in the Agreement allow voluntary opt-out at any juncture, such that no individual would be required to leave their nursing facility or participate in the programs and services provided by the Agreement.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter an order certifying the proposed class for settlement purposes and approving the Agreement.

Respectfully submitted,

/s/ *Steven J. Schwartz*
Steven J. Schwartz (Bar No. 448440)
Kathy Walker (Pro hac vice)
Center for Public Representation
5 Ferry Street
Easthampton, MA 01027
413-586-6024
Email: sschwartz@cpr-ma.org
Email: kwalker@cpr-ma.org

Deborah Filler (Bar No. 545478)
Luc Figueiredo Miller (Bar No. 711863)
Gary Klein (Bar No. 560769)
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
Email: dfiller@gbls.org
Email: LFigueiredoMiller@gbls.org
Email: gklein@gbls.org

Regan Bailey (Pro hac vice)
Eric Carlson (Pro hac vice)
Justice in Aging
1444 I Street, NW, Suite 1100
Washington, DC  20005
Phone: (202) 683-1990
E-mail: rbailey@justiceinaging.org
E-mail: ecarlson@justiceinaging.org

Dean Richlin (Bar No. 419200)
Kristyn Bunce DeFilipp (Bar No. 676911)
Jeremy Meisinger (Bar No. 688283)
Andrew London (Bar No. 690782)
Jack C. Smith (Bar No. 712045)
Foley Hoag LLP
155 Seaport Blvd., #1600
Boston, MA 02210
Email: drichlin@foleyhoag.com
Email: KBunceDeFilipp@foleyhoag.com
Email: jmeisinger@foleyhoag.com
Email: alondon@foleyhoag.com
Email: jcsmith@foleyhoag.com

June 3, 2024                          *Attorneys for Plaintiffs*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above document was filed electronically and served by mail on anyone unable to accept electronic filing.

*/s/ Jack C. Smith*

Jack C. Smith

June 3, 2024