## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID MARSTERS, ) <br> by his next friend, Nancy Pomerleau; ) <br> LORRAINE SIMPSON, by her guardian, Sara Spooner; ) <br> SHERRI CURRIN, by her guardian, Sara Spooner; ) <br> CAROLE CHOJNACKI, by her guardian, Sara Spooner; ) <br> RICHARD CAOUETTE, by his guardian, Sara Spooner; ) <br> DONALD GRANT, by his guardian, Sara Spooner, ) <br> on behalf of themselves ) <br> and other similarly situated persons; and ) <br> MASSACHUSETTS SENIOR ACTION COUNCIL, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MAURA HEALEY, in her official capacity ) <br> as Governor of the Commonwealth of Massachusetts; ) <br> KATE WALSH, in her official capacity ) <br> as Secretary, Executive Office of Health and ) <br> Human Services; ) <br> MATTHEW GORZKOWICZ, in his official capacity ) <br> as Secretary of the Executive Office of Administration ) <br> and Finance; ) <br> ELIZABETH CHEN, in her official capacity as ) <br> Secretary, Executive Office of Elder Affairs; ) <br> and MICHAEL LEVINE, in his official capacity ) <br> as Assistant Secretary of MassHealth, ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. <br> 1:22-cv-11715-NMG |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF AGREED-TO AWARD OF ATTORNEYS' FEES AND COSTS

**I.   Introduction**

      Pursuant to Paragraph 70 of the Settlement Agreement (ECF #151) ("Agreement), the Defendants have agreed to pay the Plaintiffs the amount of $1,800,000 for all attorneys' fees and costs incurred from the inception of this litigation through the Approval Date of the Agreement.

1

This amount is substantially less than the Plaintiffs' actual lodestar for this period, and their associated reimbursable costs. Because this amount represents a significant reduction of the Plaintiffs' time, hourly rate, and lodestar, and because the Defendants have agreed that this amount is appropriate, the Court should find that this amount is fair and reasonable and approve the payment of $1,800,000, pursuant to Fed. R. Civ. P. 23(h).

## II.     The Framework for Awarding Attorneys' Fees and Costs

42 U.S.C. § 12205[1] provides that in any action or proceeding brought pursuant to the Americans with Disabilities Act (ADA), "the court …, in its discretion, may allow the prevailing party … a reasonable attorney's fee, including litigation expenses, and costs…." In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court held that a plaintiff obtains prevailing party status by succeeding on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Six years later, in *Texas State Teachers Ass'n v. Garland Independent School Dist.,* 489 U.S. 782, 792 (1989), the Supreme Court decided that "to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Then in *Buckhannon Board and Care Home v. West Virginia Dep't of Health and Human Resources,* 532 U.S. 598 (2001), the Court held that in order to satisfy the "material alteration of the legal relationship" test set forth in *Texas State Teachers Ass'n*, there must be a "judicial imprimatur on the change." *Buckhannon*, 532 U.S. at 605.

---

[1] *Hensley* and *Texas State Teachers* involved fees under 42 U.S.C. § 1988. However, § 12205 uses the same "prevailing party" language as § 1988. Courts have applied the Supreme Court's prevailing party jurisprudence to all fee shifting statutes utilizing that terminology. *Perez-Sosa v. Garland,* 22 F.4th 312, 321 (1st Cir. 2022).

2

In an ADA case strikingly similar to this matter, the First Circuit applied this test in *Hutchinson ex rel. Julien v. Patrick,* 636 F.3d 1 (1st Cir. 2011), and held that the Final Comprehensive Settlement Agreement in that case easily satisfied the "material change in legal relationship" requirement. *Id.* at 9. It concluded that the District Court's review and approval of the Comprehensive Settlement Agreement, coupled with its retention of jurisdiction to oversee and enforce compliance, similarly satisfied the "judicial imprimatur" requirement. *Id.* at 10. As a result, the First Circuit affirmed the lower court's award of attorneys' fees and costs. *Id.* at 11.

### III. The Plaintiffs Are the Prevailing Parties in this Case.

The Settlement Agreement is a judicially-enforceable obligation which includes the elements critical to establishing prevailing party status. As more fully described in the Plaintiffs' Memorandum in Support of the Court's Final Approval of the Settlement Agreement, filed herewith, the Agreement obligates the defendants to undertake binding commitments to secure for the plaintiff class substantially increased access to community-based residential and support services, and to create the components and safeguards of a new community service system for people with disabilities in nursing facilities.

Indisputably, the Plaintiffs have obtained "some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433. In fact, they have obtained virtually all of the benefits they sought in their Complaint, and more, since the Agreement obligates the Commonwealth not only to create new and expanded integrated community services for at least 2,400 persons, but a well-structured and organized community service system as well. As the above-described provisions make clear, the Parties agreed upon and intended that the Agreement would create legally-binding and judicially enforceable obligations on the Defendants for the benefit of the plaintiff class, thereby clearly constituting a "material alteration of the legal relationship of the

3

parties." *Buckhannon*, 532 U.S. at 604 (quoting *Texas State Teachers Ass'n*, 489 U.S. at 792-93); *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (noting that a judgment, consent decree or *settlement* can effect a material alteration in legal relationship); *Smith v. Fitchburg Public Schools*, 401 F.3d 16, 26 (1st Cir. 2005) (holding that provisions of private settlement agreement satisfied the "material alteration of the legal relationship" test); *Williamsburg Fair Housing Committee v. New York City Housing Auth.*, 2005 WL 736146 at *4 (S.D.N.Y. 2005).

      The obligations in the Agreement are also clearly enforceable by the Court. Paragraph 89 explicitly authorizes this Court to determine if the Defendants are substantially complying with the Agreement, and, if it finds that compliance lacking, it may "enter an order consistent with equitable principles, but not an order of contempt, that is designed to achieve compliance." If that order is not sufficient to achieve compliance, the Court "may use any appropriate equitable principle or remedial power then available to it." Agreement, ¶ 90. Thus, if the Court grants final approval to the Agreement, and enters the Parties' proposed order approving the Agreement (ECF #151, Ex. A), it will have made explicit findings that the Agreement is fair, reasonable and adequate, *Id.*, ¶ 2; that it retains jurisdiction to enforce it, *Id.*, ¶ 5; and that the Plaintiffs are the prevailing parties and entitled to an award of attorneys' fees and costs, *Id.*, ¶ 6. This final approval order clearly constitutes a "judicial imprimatur" of both the relief set forth in the Agreement as well as the authority to enforce it. *Hutchinson,* 636 F.3d at 11. Finally, the dismissal order expressly incorporates these features, and explicitly provides that the Court retains jurisdiction to enforce the Agreement. Agreement, ¶ 79 and App. 2.

**IV.     The Requested Time Is Reasonable, Given the Complexity of this Litigation.**

> **A.     *Plaintiffs Are Entitled to Fees for All Time Spent on this Civil Rights Case, Provided that the Time Is Reasonable.***

Once the fee entitlement threshold has been crossed, the prevailing plaintiffs' fee award is based upon the familiar lodestar method: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435. Consistent with federal fee-shifting statutes, and Supreme Court decisions applying these statutes, the Plaintiffs are entitled to recover their attorneys' fees and costs for all time reasonably expended on this case, as well as all expenses reasonably incurred.

> **B.     *The Time Requested Is Reasonable, and Reflects a Substantial Reduction in Both the Number of Lawyers and the Number of Hours Actually Spent on This Litigation.***

Perhaps the most central consideration in determining the amount of compensable time is the determination of whether the Plaintiffs have demonstrated billing judgment with respect to their fee application. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission…. 'Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.'" *Hensley*, 461 U.S. at 434 (*quoting Copeland v. Marshall*, 641 F.2d 880, 891 (D.D.C. 1980) (en banc)).

5

It is important to keep in mind that the standard is what could and would be properly billed to a paying client. There is no public interest discount. As Congress noted in passing § 1988:

> It is intended that the amount of fees awarded … be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature.

S.Rep. No. 94-1011 at 6, *reprinted in* 1976 U.S. Code Cong. & Admin. News 5908, 5913. As more fully described below, the Plaintiffs have eliminated thousands of hours in the exercise of billing judgment, which is well beyond what is commonplace in private commercial litigation, and requested far less than would be billed to a paying client.

Consistent with the directives of the First Circuit Court of Appeals in *Grendel's Den v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984), the Plaintiffs prepared, and shared with the Defendants, detailed, contemporaneously-recorded time records which described with particularity the date, activity, and time spent on each litigation task over a two year period. *See* Affidavit of Steven J. Schwartz in Support of Plaintiffs' Memorandum on Attorneys' Fees ("Schwartz Aff."), ¶ 15. Each entry was recorded daily, as a percentage of an hour, in a computerized time keeping program. *Id*. These detailed records easily satisfy the First Circuit's and Supreme Court's documentation directive. *See Hensley*, 424 U.S. at 433; *Perez-Sosa,* 22 F.4th at 331.

Based upon a careful review of these records, each attorney then exercised billing judgment to delete or reduce various entries. *Hensley*, 424 U.S. at 434 (good faith effort to exclude hours that are "excessive, redundant, or otherwise unnecessary"). *See* Schwartz Aff., ¶ 16. They completely eliminated all time spent on legislative or media related tasks, training and educational activities, general meetings, consulting with experts who ultimately did not participate in the case, and clerical or organizational tasks. *Id*. They substantially reduced time on co-counsel conferences, travel, and

the drafting of certain pleadings, such as the complaint and the requests for production of documents. *Id.* They also omitted or deleted extensive time spent communicating with individual plaintiffs and relevant family and provider organizations, conducting factual and legal research, reviewing state agency documents and administrative decisions, conferring with other legal experts, and collaborating with legal and support staff in their offices. *Id.*

Most importantly, each firm eliminated all time spent by eight attorneys who significantly contributed to, but did not continuously participate in, the litigation and its success. *Id.*, ¶ 17. Taken together, they eliminated, deleted, or reduced almost 2,289 hours actually spent on this litigation, in the exercise of billing judgment. *Id.*, ¶ 18. Overall, Foley discounted its time by 60%, CPR by 30%, and JIA and GBLS by 15% each. *Id.* Given these substantial reductions, the Plaintiffs' lodestar fairly represents the reasonable time expended by each attorney, paralegal, and law student in this case.

      C.    *The Novelty and Complexity of This Litigation Required Multiple Attorneys With Discrete Responsibilities and Expertise.*

An additional factor to be considered when evaluating the reasonableness of the time expended is the novelty and complexity of the case. As the Supreme Court noted in *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), the difficulty of a case "is ordinarily reflected in the lodestar – either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced to do so." The First Circuit has also specifically noted that the "retaining of multiple attorneys in a significant, lengthy discrimination case...is understandable and not a ground for reducing the hours claimed." *Lipsett v. Blanco*, 975 F.2d 934, 939 (1st Cir. 1992) (citing *Johnson v. University College of the University of Ala.*, 706 F.2d 1205, 1208 (11th Cir. 1983) *cert. denied*, 464 U.S. 994 (1983)). *See also Arthur D. Little International, Inc. v. Dooyand Corp.*, 995 F. Supp. 217, 225 (D. Mass. 1998); *Bailey v. Dart*

7

*Container Corp.*, 980 F. Supp. 584, 593 (D. Mass. 1997); *Rini v. United Van Lines*, 903 F. Supp. 234, 238 (D. Mass. 1995) *rev'd on other grounds* 104 F.3d 502 (1st Cir. 1997).

      The legal and factual complexity of this case is unique, both for the attorneys involved and in terms of the relief obtained. *See* Schwartz Aff., ¶ 21. As the Supreme Court has noted, the Medicaid Act "is among the most intricate ever drafted by Congress. Its Byzantine construction, as Judge Friendly has observed, makes the Act "almost unintelligible to the uninitiated." *Friedman v. Berger*, 547 F.2d 724, 727, n. 7 (2d Cir. 1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977); *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981). The statute has become even more complex with time and the widespread utilization of waivers, which permit further permutations and deviations from this already intricate statutory and regulatory scheme. The Commonwealth relied heavily upon such waivers and used the complexity of this statutory exception to Medicaid requirements to address the legal violations alleged in the Complaint. The same is true of the ADA, because of the defenses created by the Supreme Court in *Olmstead v. L.C.,* 527 U.S. 581 (1999) and the myriad competing interpretations of the fundamental alteration defense by the courts of appeal.

      In addition to the legal complexity, the factual complexity of the case posed unique challenges. The class of persons with disabilities in nursing facilities includes thousands of people with a wide range of conditions confined in hundreds of facilities across the Commonwealth. Schwartz Aff., ¶ 21. They are served by an informal and confusing network of institutional and community programs, all with their own rules, protocols and coverage requirements. They are administered through a host of different state and local agencies, many of which have conflicting or inconsistent eligibility criteria, service models, catchment areas and legal obligations. An array of experts were needed to describe the appropriate treatments and services for the plaintiff class in the

current service delivery system, and effective methods to correct those deficiencies. Finally, the number of defendants and state agencies, each with their own counsel and litigation strategy, presented additional challenges to the litigation of this case. *Id.* Simply put, it would have been irresponsible to undertake this case without a team of experienced attorneys, each with his or her own expertise, to address the many disparate and discrete issues in this case. *Id.*

Although this litigation was grounded in well-established precedents concerning the federal right of qualified institutionalized persons with disabilities to live in integrated community settings, it is the first case in the country to seek community placement for thousands of persons in nursing facilities with a range of disabilities. Unlike other similar cases that have been brought only against the single state Medicaid agency, this lawsuit included a range of state officials and numerous state agencies. It had to overcome a defense that some services already were being provided and that more services were not required by law, and that expanding state programs would constitute a fundamental alteration of the State's program. The complexity and the novelty of this litigation, on a national as well as local level, were truly unique. Given this complexity, it is entirely appropriate and necessary that this case was litigated by multiple attorneys from private and public interest firms. *Id.*

Multiple attorneys with varied expertise commonly are used in Medicaid and other system reform cases for persons with disabilities. For instance, at least eight attorneys from three firms were involved in a related case involving the right to home-based services under EPSDT in Massachusetts. *See Rosie D. v. Patrick,* 593 F. Supp. 2d 325 (D. Mass. 2009). Similarly, in another case before this Court, the Magistrate Judge determined that it was reasonable for eight attorneys and two paralegals from the Center for Public Representation, the Disability Law Center, the Mental Health Legal Advisors Committee, and the private firm of Foley Hoag to litigate a complex class

9

action suit on behalf of nursing facility residents with developmental disabilities. *Rolland v. Cellucci,* 106 F. Supp.2d 128, 135-137 (D. Mass. 2000) (holding that the complexity, novelty, and pace of the case, as well as its vigorous defense, made multiple attorneys necessary and appropriate).

Numerous steps were taken to ensure that the attorneys' work was efficient, effective, and not duplicative. Schwartz Aff., ¶ 22. Where the complexity of task did not require a senior attorney, a less experienced lawyer, supervised by a more senior lawyer, was assigned to that issue. *Id.* This careful allocation of responsibilities avoided multiple lawyers being involved in overlapping activities, promoted efficient and effective lawyering, and ensured there was no duplication or excessive time spent on any single activity or the case as a whole. *Id.*

      D.    *The Plaintiffs Have Obtained an Exceptional Result and Are Entitled to Fees for All Time Reasonably Spent on This Civil Rights Case.*

This case resulted in a settlement that will provide an entirely new community support system for people with a wide range of disabilities, and community residential services for at least 2,400 persons currently segregated in nursing facilities. The Plaintiffs' success was exceptional, realizing virtually all of the relief they were seeking. Where, as here, the Plaintiffs "ha[ve] obtained excellent results", they "should recover a fully compensable award." *Hensley*, 461 U.S. at 435.

**V.**    **The Requested Rates Are Reasonable, Given the Experience of Plaintiffs' Counsel.**

      A.    *The Plaintiffs Are Entitled to Hourly Rates That Reflect Each Attorney's Experience and Expertise, Consistent With the Private Market for Similarly Qualified Lawyers.*

In *Blum v. Stenson*, 465 U.S. at 893-95, the Supreme Court made clear that fee awards under 42 U.S.C. § 1988 should "be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." In

support of this conclusion, the *Blum* court pointed to the legislative history where Congress explained that fee awards under § 1988 should "be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases…." S.Rep. No. 94-1011 at 6, *reprinted* in 1976 U.S. Code Cong. & Admin. News at 5913.   Where private counsel are involved, "the best evidence [of their reasonable hourly rate] is the hourly rate customarily charged by counsel…." *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir.1986); *Hutchinson,* 636 F.3d at 15.  Since civil rights litigation can be lengthy, and since any fee recovery is often many years after the lawsuit is commenced, the Supreme Court has determined that an attorney's current market rate should normally be applied retroactively, to account for the delay in payment and the lost value of money. *See Missouri v. Jenkins,* 491 U.S. 274, 283-84 (1989).

   Another court in this District has already determined the standard, criteria, and, in fact, the rates for many of the attorneys in this case.  In *Rosie D. v. Patrick,* 593 F. Supp. 2d 325 (D. Mass. 2009), Judge Ponsor adopted a three-part analysis: (1) first, the actual rates charged by private attorneys to their paying clients are the best evidence of their reasonableness; (2) second, public interest attorneys with similar experience and skills are entitled to the same rates as their private counterparts; and (3) third, supplemental evidence by other attorneys of the reasonableness of these rates in the relevant market further supports the appropriateness of using these rates in calculating a fee award.  *Id.* at 30.  More recently, Judge Stearns determined hourly rates for Mr. Schwartz and his colleagues in the same litigation. *See Rosie D. v. Baker*,  2022 WL 847410, *4, n. 2 (D. Mass., March 22, 2022) (approving $700/hour for Mr. Schwartz, and noting the Commonwealth did not challenge this rate).[2]  The same rates should apply to his equally-experienced and qualified co-

---

[2] Judge Stearns also recently determined hourly rates for Foley Hoag lawyers of similar seniority to Ms. DeFilipp in her colleagues well in excess of the requested rates for those attorneys. *BioPoint, inc. v. Dikhaut et al.*, No. 20-10118, 2023 U.S. Dist. LEXIS 118565 (July 11, 2023).

11

counsel here, attorneys Mark Murphy (CPR), Gary Klein and Deborah Filler (GBLS), and Eric Carlson (JIA). The requested rates for all other attorneys were commensurate with the rates approved by Judge Stearns for similarly-experienced attorneys. Schwartz Aff., ¶ 23.

The hourly rates originally requested by the Plaintiffs were based upon the recently-updated hourly rate scale of the National Consumer Law Center.[3]  *Id.*  This scale was relied upon by Judge O'Toole in *Malone v. Hecker*, 2007 WL 4200951 * 2 (D. Mass., Nov. 27, 2007). Although the Parties' fee agreement does not separately specify the hourly rate applied in reaching the agreed-to amount of fees, the NCLC rates exceed the revised rates requested by the Plaintiffs, and thus are plainly reasonable.

## VI. The Requested Lodestar Is Reasonable.

As the Supreme Court has made clear, "[t]he calculation of shifted attorneys' fees generally requires courts to follow the familiar lodestar approach." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010). This has long been the standard in the First Circuit. *See Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331 (1st Cir. 1997)("The lodestar method is the strongly preferred method by which district courts should determine what fees to award prevailing parties in actions that fall within the ambit of section 1988"); *Perez-Sosa,* 22 F.4th at 321. The lodestar is the product of the number of hours reasonably expended multiplied by a reasonable hourly rate. When a plaintiff substantially achieves the relief sought, the beginning and end of the calculation of reasonable attorney's fees is the lodestar.

---

[3] NCLC is a public interest law firm that, like CPR, is funded by the Massachusetts Legal Assistance Corporation to provide statewide advocacy for low-income persons and support to legal services programs in Massachusetts. NCLC, like CPR, is also a national legal support center that provides national advocacy and technical assistance for low-income persons in other States.

After exercising billing judgment, the Plaintiffs' total lodestar in this case exceeded $4,170,070. This amount represents the reasonable time that all attorneys who worked on this case spent achieving the significant results for class members, after the exercise of billing judgment, after a dramatic reduction of many attorneys' time, and after the elimination of numerous attorneys, then multiplied by a reasonable hourly rate which reflects the relevant market in Massachusetts for lawyers of similar experience and special expertise.

Although *Hensley* would suggest that the plaintiffs are entitled to this full amount, the Plaintiffs then voluntarily applied a further 10% reduction, consistent with what courts have applied in similar cases.[4] Schwartz Aff., ¶ 19. *See Rolland v. Cellucci,* 106 F. Supp. 2d 128, 141-42 (D. Mass. 2001) (10% reduction for duplication). This additional reduction resulted in an adjusted lodestar of $3,817,327 for all time spent from the inception of the case through the approval of the Agreement. All of these reductions are substantial and, have been characterized by one court as "an eloquent expression of the good faith of the WilmerHale contingent." *Rosie D.,* 593 F. Supp. 2d at 330.

Finally, since the reduced lodestar only included time spent by Plaintiffs' counsel up to February 1, 2024, and since the Plaintiffs' counsel have already spent hundreds of hours since that date negotiating the final Agreement, seeking preliminary approval of the Agreement, informing class members of the Agreement, drafting this and the fairness memo in support of final approval of the Agreement, and preparing for the fairness hearing, the reduced lodestar does not include any of this time, even though all of it is compensable pursuant to well-established fee shifting principles.[5]

---

[4] The percentage reduction approach is usually employed by courts *in lieu of*, and not in addition to, reductions for itemized activities or categories of activities. It is primarily a matter of convenience that saves the court the time of pouring through volumes of time records and reducing time on multiple entries.

[5] Based upon a very conservative estimate of this time, the Plaintiffs' reduced lodestar omits at

Although there is no request for an enhancement of this adjusted lodestar, there should not be any decrease in the final requested amount either, particularly given the complexity of this case and its extraordinary success.

## VII.  The Requested Costs Are Reasonable.

Plaintiffs are entitled to all reasonable expenses incurred in the litigation of this action. *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983).  In *Palmigiano,* the First Circuit affirmed an award of out-of-pocket costs for items such as "transportation, lodging, parking, food and telephone expenses" in a § 1983 action, noting the "unanimous federal circuit court authority that the attorneys' reasonable and necessary costs and expenses may be awarded to a prevailing party pursuant to 42 U.S.C. 1988." *Palmigiano*, 707 F.2d at 637; *see also Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 43 (1st Cir. 2006) (citing *Palmigiano* with approval); *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000).  All litigation expenses are normally compensable, including stenographic transcripts of depositions; daily trial transcripts; witness fees including necessary travel, meals and lodging; copying costs; constable fees for service of subpoenas; computer assisted legal research; attorney travel including parking, meals and lodging; telephone expenses; and more.  *See, United States v. Davis*, 87 F. Supp.2d 82, 87-89 (D. R.I. 2000); *Palmigiano*, 707 F.2d at 637; *Attrezzi*, 436 F.3d at 43.  As long as the cost is reasonable and it is the type of expense that is routinely billed to private clients in the relevant market, it is recoverable.

The First Circuit has similarly allowed a wide range of costs when incurred in pursuant of the successful litigation.  For instance, it long ago declared that travel expenses incurred by counsel

---

least an additional $300,000 for legal work undertaken between February 1 – June 3, 2024. Schwartz Aff., ¶ 20.

to attend hearings, meet with clients or opposing counsel, or attend negotiation or mediation sessions are compensable under fee shifting statutes. *Hutchinson,* 636 F.3d at 15(travel time and costs are reimbursable); *Grendel's Den v. Larkin*, 749 F.2d 945, 956 (1st Cir. 1984)(agreeing that travel and mailing costs are reimbursable); *Ackerley v. City of Somerville*, 901 F.2d 170 (1st Cir. 1990)(allowing reimbursement for travel, computerized research, and photocopying but reducing the amount claimed due to excessiveness). This rule has been followed by most other circuit courts. *See Redding v. Fairman*, 717 F.2d 1105, 1119 (7th Cir. 1983). *See also* Newberg, ATTORNEY FEE AWARDS, secs. 4.43-44 and 2.19 (1986) (listing cases approving allowance of travel, copying, postage, long distance telephone, and computerized legal research as reimbursable litigation costs under both fee shifting statutes and common fund lawsuits).

The plaintiffs incurred a total of $64,263 in litigation costs, mostly for experts needed to support their motion for class certification and opposition to the defendants' motion to dismiss. All of these costs have previously been approved by the court in *Rosie D.,* 593 F. Supp. 2d at 334 and similar civil rights cases in this District. The incurred costs are all appropriate, necessary, and compensable.

## VIII.  Conclusion

For the reasons set forth above, the Court should approve the payment of $1,800,000 to the Plaintiffs for their attorneys' fees and costs incurred from the inception of this case through the Approval Date of the Settlement Agreement.

Respectfully submitted,

/s/ *Steven J. Schwartz*
Steven J. Schwartz (Bar No. 448440)
Kathy Walker (Pro hac vice)
Center for Public Representation
5 Ferry Street
Easthampton, MA 01027
413-586-6024
Email: sschwartz@cpr-ma.org
Email: kwalker@cpr-ma.org

Deborah Filler (Bar No. 545478)
Luc Figueiredo Miller (Bar No. 711863)
Gary Klein (Bar No. 560769)
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
Email: dfiller@gbls.org
Email: LFigueiredoMiller@gbls.org
Email: gklein@gbls.org

Regan Bailey (Pro hac vice)
Eric Carlson (Pro hac vice)
Justice in Aging
1444 I Street, NW, Suite 1100
Washington, DC  20005
Phone: (202) 683-1990
E-mail: rbailey@justiceinaging.org
E-mail: ecarlson@justiceinaging.org

Dean Richlin (Bar No. 419200)
Kristyn Bunce DeFilipp (Bar No. 676911)
Jeremy Meisinger (Bar No. 688283)
Andrew London (Bar No. 690782)
Jack C. Smith (Bar No. 712045)
Foley Hoag LLP
155 Seaport Blvd., #1600
Boston, MA 02210
Email: drichlin@foleyhoag.com
Email: KBunceDeFilipp@foleyhoag.com
Email: jmeisinger@foleyhoag.com
Email: alondon@foleyhoag.com
Email: jcsmith@foleyhoag.com

June 3, 2024                              *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above document was filed electronically and served by mail on anyone unable to accept electronic filing.

                                        */s/ Jack C. Smith*
                                        Jack C. Smith

June 3, 2024